**Ex Parte James Michael PETERSON, Appellee.**

**No. 0201–02.**

Court of Criminal Appeals of Texas.

Oct. 8, 2003.

Deric King Walpole, McKinney, for Appellant.

John A. Stride, Asst. DA, McKinney, Matthew Paul, State's Attorney, Austin, for State.

*OPINION*

PER CURIAM.

In this case we clarify the standards under which the Texas constitutional double jeopardy provision, as explained in *Bauder v. State*,[1] prohibits a retrial after the defense successfully requests a mistrial. Here, the trial judge granted defendant's motion for mistrial when the prosecutor asked a question of her first witness that appellant claimed was improper. The defense then filed a pretrial double jeopardy motion to bar any retrial which, after a hearing, the trial judge also granted in part. Both the State and the defendant appealed and the court of appeals affirmed the trial court's ruling.[2] We granted the State's petition for discretionary review to address two issues: 1) Should the *Bauder* line of cases be abandoned? and 2) Did the court of appeals properly apply *Bauder* to this case? Because we conclude that the courts below were mistaken in their application of *Bauder* to this situation, we need not today address the broader question of whether *Bauder* and its progeny should be overruled.[3] We therefore dismiss the State's first ground for review as improvidently granted. Instead, we clarify the three-pronged analysis by which trial and appellate courts review *Bauder* claims, as well as set out a non-exhaustive list of objective factors for courts to consider when evaluating them.

1.  921 S.W.2d 696 (Tex.Crim.App.1996).

2.  *Ex parte James Michael Peterson*, Nos. 05–01–01093–CR, 05–01–01286–CR, 2001 WL 1671157, 2001 Tex.App. LEXIS 8407 (Tex. App.-Dallas 2001) (not designated for publication).

3.  *See State v. Lee*, 15 S.W.3d 921, 922 n. 1 (Tex.Crim.App.2000) (declining to reach question of whether *Bauder* should be overruled because it was unnecessary to disposition of

case); *see also Watts v. State*, 99 S.W.3d 604, 615 (Tex.Crim.App.2003) (Keasler, J., concurring) (stating that "appellate courts should strive for prudence.... 'Prudence counsels judges not to reach out and decide large, controversial issues in the absence of a necessity to do so. The prudent jurist will typically decide cases on the narrowest, surest ground available, leaving tougher calls, with broader implications, for future cases that squarely present them.' ").

## I.

James Michael Peterson was charged with two offenses: possession of cocaine with intent to deliver and possession of cocaine. His attorney filed a discovery motion, requesting notice of any statements that Peterson made to law enforcement agents and copies of any recordings. The State agreed to provide both. The prosecutor gave defense counsel a copy of the written arrest summary which was all that she had at the time of the discovery request. That summary stated, in part:

On 02/17/20 [sic], Det. Speaks and other members of the Plano Narcotics Unit had conducted surveillance on a suspect identified as James M. Peterson WM 11/13/76. Det. Spears had spoken to Peterson who had informed her that he had 3.0 grams of cocaine in his possession. Narcotics officers set up surveillance on Peterson's residence and followed him when he left his residence in route to Plano.

According to the summary, when those officers saw Peterson commit traffic violations, they requested other, uniformed, officers to stop him, and "[t]he traffic stop and conversation with Peterson were video tape[d] and recorded." Peterson consented to a search of the car, during which the officers found a marijuana pipe, a baggie of marijuana, and a small suede pouch containing approximately 3 grams of crack cocaine.

According to the prosecutor's testimony at the habeas corpus hearing, she thought that there was a video tape of the traffic stop because of the statements in the arrest summary. She also thought there might be an audio tape of the original conversation between Officer Spears and Peterson, so she asked her investigator to

check "several places" for tapes. The investigator was told that the videotape had been recycled and no longer existed.

The prosecutor met with Officer Spears a week before the trial and asked about the existence of any tapes. Officer Spears told her that "she [Officer Spears] could not recall any such [video] tape, only audiotapes of her conversations." Officer Spears agreed to check and, on the day of trial, she arrived with audiotapes of the telephone conversations she had with Mr. Peterson as well as the videotape of the traffic stop. Officer Spears told the prosecutor that she had kept them in her personal files when she left the narcotics department about a year and a half earlier.

The prosecutor testified that she became aware of the tapes only about half an hour before the trial started. She immediately told the defense attorney of their existence and offered to let him view them.[4] He did not want to, nor did he want to say anything to the trial judge. The prosecutor said:

I asked him if he wanted to approach the judge and ask the judge to give us maybe half an hour before the trial commenced to look at them to see if that would change his position in any way .... and he said that no, at that time he didn't choose to do that, that we would just go ahead and go through with the trial and deal with it later.

The prosecutor then told the defense attorney that she would not use the audio or video tapes at trial because she had not produced them during discovery. The trial began and, during her opening statement, the prosecutor told the jury:

You are going to hear that on February 17th of the year 2000 Rose Spears, un-

---

4. At that time, the jury members had been selected but not sworn in; thus, jeopardy had not attached at the time the tapes were produced, at the time the prosecutor told the defense attorney about them, or at the time the defense declined to review them.

dercover narcotics officer—well, in a time period before this—was in contact with the defendant, James Michael Peterson. She had been put on him through a third party, and she had called him to set up a buy of cocaine. They had several conversations with regard to its availability, when she needed it, how much she needed, could he get it for her, and he said that he could, and they set up a buy.

The defense did not object.

The State called Officer Spears as its first witness. She testified that she had been given appellant's name "and [was] basically introduced over the phone to him by a confidential informant." The prosecutor then asked: "Did you ever have occasion to discuss with the defendant an opportunity to purchase cocaine?" At that point, defense counsel objected, citing his pretrial motion in limine and motion for discovery, and said that the trial court had ordered the State to turn over any of Peterson's statements. The prosecutor responded that she did not ask about the content of any statement made by appellant: "I asked her if she had any opportunity to talk with him about the purchase of cocaine." The trial court overruled the defense objection, but instructed the prosecutor to limit her questions to the material in the arrest report summary.[5]

The prosecutor then continued:

Q: Had you had conversations with the defendant with regard to the purchase of cocaine?

A: Yes, I did.

Q: And who was—who was to purchase the cocaine?

A: I was to purchase it from him.

Q: Okay. And how did you go about asking him for that?

A: I just asked him if he could get me, I believe it was an eight ball of powdered cocaine.

Q: And did he agree that he could do that?

A: Yes. He stated he could.

The defense objected: "Violation of the discovery order." The trial court sustained the objection, instructed the jury to disregard, and then granted the defendant's request for a mistrial,[6] telling the prosecutor:

Well, the Court is going to grant the mistrial, give you another opportunity to give discovery to the defendant so we can have a full disclosure to the defense about what you intend to present.

Mr. Peterson filed a pretrial habeas corpus application that same day and asserted that any retrial was barred by the Double Jeopardy Clause of the United States and Texas Constitutions and article 1.10 of the Code of Criminal Procedure.

---

5. The prosecutor explained at the habeas hearing that, based upon the trial judge's ruling, she thought it was "okay" to talk about that conversation. She said: "I pointed out areas in the discovery responses which I believe had supported my position that I was able to go into that area. And then the objection was overruled and I was allowed to proceed if it was based on that, and my belief was because I had pointed it out in support of my talking about the conversation between Rose Spears and the defendant with regard to the purchase of narcotics that I was going to

be allowed to continue that line of questioning."

6. When the defense asked for a mistrial, the prosecutor explained that she thought that the arrest summary put the defendant on notice "that these were the statements that he was making with regard to the purchase of cocaine....Your Honor, in the context of this where she's contacting him with regard to that and that he's going to meet her, I think it's clear that...." At that point the trial judge interrupted and granted the mistrial.

The trial court held a hearing on this motion in which the prosecutor was the only witness. She outlined her actions and the rationale for them as set out above. She also agreed with defense counsel that the audio and video tapes significantly added to the strength of her case and were, when coupled with the other evidence, "pretty damaging." She disagreed with defense counsel that the arrest summary did not contain any statements by Mr. Peterson offering to sell cocaine, although she agreed that this is how the trial court interpreted that summary. She stated, on cross-examination, that she was not aware that she was taking any risk that would require a mistrial nor did she think that she had done anything that was objectionable. Under oath, she denied that she had been aware of, but consciously disregarded, the risk that an objectionable event for which she was responsible would require a mistrial at the defendant's request. She testified that she was not attempting to secure a mistrial and she had no belief that her questions to Officer Spears would cause a mistrial, especially since the defense had not objected to her opening statement nor to some of her questions to Officer Spears. She stated that she was perfectly willing to go forward with the original trial without the video and audiotapes; indeed that had been her own suggestion to defense counsel, made before jeopardy attached.

Without explanation, the trial court granted habeas relief on the possession with intent to deliver count, but denied relief on the simple possession count. Both the defense and the State appealed.[7] The court of appeals relied upon this Court's decision in *Ex parte Bauder,* 974 S.W.2d 729 (Tex.Crim.App.1998)(*Bauder II* ), and concluded that:

> From this record the trial judge could have concluded appellant's motion [for mistrial] was not a choice made in response to ordinary reversible error to avoid conviction, appeal, reversal, and retrial, but was precipitated by the prosecutor deliberately or recklessly crossing the line between legitimate adversarial conduct and manifestly improper methods. Furthermore, the trial judge could have concluded the prosecutor's conduct rendered the trial so unfair that no judicial admonishment could have cured it. Under these facts and circumstances, we cannot conclude the trial court erred in granting appellant habeas relief.[8]

## I.

Both the Double Jeopardy Clauses of the Fifth Amendment and of Art. 1, section 14 of the Texas Constitution "protect a criminal defendant from repeated prosecutions for the same offense."[9] Although a defendant has a "valued right to have his trial completed by a particular tribunal,"[10] neither constitutional provision guarantees that the State "will vindicate its societal interest in the enforcement of the criminal laws in one proceeding."[11] Thus, double jeopardy principles do not

---

7. The defense appealed the trial court's denial of his double jeopardy claim on the simple possession of cocaine count. The court of appeals affirmed the trial court's ruling on this issue.

8. Slip op. at 8 (*12–13) (citations omitted).

9. *See Oregon v. Kennedy,* 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *Bau-*

*der v. State,* 921 S.W.2d 696, 698 (Tex.Crim. App.1996).

10. *Kennedy,* 456 U.S. at 671–72, 102 S.Ct. 2083 (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949)); *see also Bauder,* 921 S.W.2d at 697–98.

11. *Kennedy,* 456 U.S. at 672, 102 S.Ct. 2083.

forbid multiple trials of a single criminal charge if the first trial resulted in a mistrial that: (1) was justified under the manifest necessity doctrine;[12] or (2) was requested or consented to by the defense, absent prosecutorial misconduct which forced the mistrial.

It is this second prong—a mistrial requested by the defendant who asserts that he was compelled to do so because of prosecutorial misconduct—that is at issue in the present case. The underlying principle is that a mistrial which the defense freely chooses to request does not bar retrial. A mistrial that the defense is compelled to request because of manifestly improper prosecutorial conduct may, under certain circumstances, bar retrial.

### A. Federal double jeopardy principles bar retrial when the prosecutor intended to goad the defendant into requesting a mistrial.

The United States Supreme Court has long recognized that even if a mistrial is consented to or requested by the defendant, double jeopardy will bar a retrial under some limited circumstances.[13] In *United States v. Dinitz*,[14] the Supreme Court held that "the Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions."[15] Although that statement seemed relatively clear, the Court immediately added that the Double Jeopardy Clause "bars retrials where 'bad-faith conduct by judge or prosecutor' ... threatens the 'harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant."[16] These two statements created confusion: did double jeopardy bar retrial only for "government actions intended to provoke mistrial requests" or also for "bad faith conduct" or "harassment" by the judge or prosecutor?

In *Oregon v. Kennedy*,[17] a divided Supreme Court resolved this confusion and held that "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion."[18]

In *Kennedy*, the State charged the defendant with theft of an oriental rug.[19] The prosecution called an expert on Middle Eastern rugs to testify about the value and identity of the stolen rug.[20] During cross-examination and in an attempt to establish the witness' bias, defense counsel asked the expert if he had filed criminal charges against Kennedy. On redirect,

---

12. *See, e.g., Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Ex parte Little*, 887 S.W.2d 62 (Tex.Crim.App. 1994).

13. *See United States v. Jorn*, 400 U.S. 470, 483–84, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality op.) (double jeopardy may bar retrial when the circumstances prompting mistrial are "attributable to prosecutorial or judicial overreaching").

14. 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

15. *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

16. *Id.* (citations omitted).

17. 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).

18. *Id.* at 676, 102 S.Ct. 2083.

19. *Id.* at 669, 102 S.Ct. 2083.

20. *Id.*

the prosecutor asked the witness to explain why he had filed those charges, but when the trial court sustained the defendant's objections, the following occurred:

> Prosecutor: Have you ever done business with the Kennedys?
>
> Witness: No, I have not.
>
> Prosecutor: Is that because he is a crook?[21]

The trial court immediately granted the defendant's motion for mistrial. Kennedy then moved to have the charges dismissed based on double jeopardy, but the trial court denied that motion, finding that the prosecutor did not intend to cause a mistrial.[22] The Oregon Supreme Court reversed, concluding that, even if the prosecutor had not intended to cause the mistrial, his actions were motivated by bad faith or to harass or prejudice the defendant.[23] The Supreme Court, in turn, reversed the Oregon court.

The Supreme Court rejected its earlier "bad faith" language in *Dinitz*, and reasoned that an "intent" test was necessary to have "a manageable standard to apply" in mistrial situations.[24] This intent standard "merely calls for the [trial] court to make a finding of fact ... using the familiar process in our criminal justice system [of] inferring the existence or nonexistence of intent from objective facts and circumstances...."[25] The broader "bad faith" standard, by contrast, would be at issue in virtually every mistrial situation because "[e]very act on the part of a rational prosecutor during a trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt."[26] Furthermore, any test broader than "intent to goad a mistrial" would be counterproductive because trial judges would be loath to grant legitimate mistrial requests in fear that doing so would "all but inevitably bring with it an attempt to bar a second trial on grounds of double jeopardy...."[27]

Justice Powell joined the Court's opinion and also wrote separately to underscore the importance of relying "primarily upon the objective facts and circumstances of the particular case" in determining the prosecutor's subjective intent, which may often be unknowable.[28] He noted three objective facts which supported the trial court's conclusion that the prosecutor did not intend to goad the defendant into a mistrial: 1) the lack of repetitive misconduct; 2) the prosecutor seemed surprised by the mistrial request and resisted the defendant's motion; and 3) the trial court believed the prosecutor's testimony that he had no intent to cause a mistrial.[29]

Four justices disagreed with the majority's analysis, although they joined in its judgment. They believed that it should be "sufficient that the court is persuaded that egregious prosecutorial misconduct has rendered unmeaningful the defendant's choice to continue or to abort the proceeding."[30] Instead of relying upon the prosecutor's intent, these justices proposed a

21. *Id.*

22. *Id.* at 669–70, 102 S.Ct. 2083.

23. *Id.* at 670, 102 S.Ct. 2083.

24. *Id.* at 674–75, 102 S.Ct. 2083.

25. *Id.* at 675, 102 S.Ct. 2083.

26. *Id.* at 674, 102 S.Ct. 2083.

27. *Id.* at 676, 102 S.Ct. 2083.

28. *Id.* at 679–80, 102 S.Ct. 2083 (Powell, J., concurring).

29. *Id.* at

30. *Id.* at 689, 102 S.Ct. 2083 (Stevens, J., joined by Brennan, Marshall, and Blackmun, JJ., concurring).

two-pronged requirement: (1) "deliberate misconduct" by the prosecutor; and (2) resulting prejudice that "virtually eliminated, or at least substantially reduced, the probability of acquittal in a case in which the trial was going badly for [the prosecutor]."[31]

All members of the Supreme Court apparently agreed that, for double jeopardy to apply, the defense must show that the prosecutor committed "deliberate misconduct" and that this misconduct had the result (whether specifically intended or not) of seriously prejudicing a defendant who, absent that misconduct, would likely have a "probability of acquittal." The *Kennedy* standard continues to apply to all double jeopardy claims based upon the federal constitution in the defense-requested mistrial situation.

## B. Under *Bauder,* Texas' double jeopardy provision also bars retrial when the prosecutor's reckless misconduct requires a mistrial.

For fourteen years, this Court followed the federal double jeopardy standard set out in *Kennedy.*[32] In *Bauder v. State*

---

31. *Id.* at 690, 102 S.Ct. 2083. The dissenters also noted that "[d]eliberate misconduct generally must be inferred from the objective evidence. The more egregious the prosecutorial error, and the harsher its impact on the defendant, the more readily the inference could be drawn." *Id.* n. 29, 102 S.Ct. 2083.

32. *See Hart v. State,* 634 S.W.2d 714, 716 (Tex.Crim.App.1982) (noting *Kennedy* with approval and stating that "[t]he unrebutted testimony of the prosecutor on the second trial conclusively shows the prosecutor did not intend his conduct to provoke the appellant into moving for a mistrial"; finding that prosecutor's failure to comply with pretrial discovery order was a mere oversight because of overloaded docket and the "great excitement" of arguing a case), *overruled on other grounds by Cane v. State,* 698 S.W.2d 138 (Tex.Crim.App.1985); *Anderson v. State,* 635 S.W.2d 722, 726, 730–31 (Tex.Crim.App. 1982) (rejecting defendant's contention that the State "intended to cause a mistrial" by "the direct overreaching and unacceptable conduct of the prosecution"; dissenters apply *Kennedy* standards and reasoning in addressing "whether, by deliberately asking the question forming the basis for the mistrial, the prosecutors intended to provoke the accused into requesting that result"); *Collins v. State,* 640 S.W.2d 288, 290 (Tex.Crim.App.1982) (stating that "[a]lthough the opinion of the [trial] court did not cite *Oregon v. Kennedy,* this court recently held that the same standard will be applied in Texas to cases involving a plea of former jeopardy after the defendant asked for a mistrial"; noting that "the determination of the intent of the prosecutor is a factual question to be decided by the trier of fact" and reversing conviction because the jury, as factfinder, was not given the question); *Crawford v. State,* 703 S.W.2d 655, 661 (Tex.Crim.App.1986) (relying on *Kennedy* as standard for double jeopardy after mistrial and concluding that "[b]ecause there was no evidence of intent to provoke appellant into moving for a mistrial, there was no fact issue to present to the jury, and the trial court correctly overruled both the plea of former jeopardy and appellant's request to submit the issue to the jury"). Texas intermediate courts had also applied the *Kennedy* standard to double jeopardy claims in the mistrial situation. *See, e.g., Mahavier v. State,* 644 S.W.2d 129 (Tex.App.-San Antonio 1982, no pet.) (relying on *Kennedy* in finding no double jeopardy bar to retrial because no evidence that prosecutor intended to provoke defendant into requesting mistrial); *Collins v. State,* 672 S.W.2d 588, 598 (Tex.App.-Fort Worth 1984, no pet.) (applying *Kennedy* double jeopardy standard to situation in which trial court denies mistrial motion but that denial is reversed because of prosecutorial misconduct); *Fielder v. State,* 683 S.W.2d 565, 568 (Tex.App.-Fort Worth 1985) (applying *Kennedy* as "controlling authority" to double jeopardy claim in context of defense-requested mistrial), *rev'd on other grounds,* 756 S.W.2d 309 (Tex.Crim.App. 1988); *Ex parte May,* 852 S.W.2d 3, 4–6 (Tex. App.-Dallas 1993, pet. ref'd) (holding that *Kennedy* standard applies to double jeopardy claims brought under both Texas and United States Constitutions and holding that only when the prosecutor intends to goad the defendant into moving for a mistrial will retrial be barred); *Creekmore v. State,* 860 S.W.2d 880, 890–92 (Tex.App.San Antonio 1993, pet.

(*Bauder I*),[33] however, this Court held that, although the double jeopardy concerns in both constitutions were the same,[34] the *Kennedy* federal double jeopardy standard did not necessarily provide the outermost limits of a defendant's rights under the corresponding Texas constitutional provision.[35] Thus, this Court extended the *Kennedy* double jeopardy bar to include both those situations in which the prosecutor specifically intended to goad the defendant into requesting a mistrial, and those in which "the prosecutor was aware [of] but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request."[36] Thus, either "intent to goad" or

"conscious awareness of the risk of a required mistrial" suffices under *Bauder I*.

In *Bauder I*, this Court based its state constitutional expansion of *Kennedy* on two grounds. First, we perceived no constitutionally significant difference between a prosecutor's conduct by which he *intends* to cause a mistrial and conduct of which "he is aware is reasonably certain to result in a mistrial."[37] Second, we perceived practical advantages of what we said was "a less subjective rule," because it would permit "a more certain application of the rule in most cases."[38] However, because the *Bauder* standard relies upon proof of the prosecutor's "reckless" mental state, and proof of a reckless act is no less subjective a standard than proof of an intentional act,[39] this second rationale car-

ref'd) (stating that "Texas cases interpreting article I, section 14 of the Texas Constitution are consistent with *Oregon v. Kennedy*"); *Demouchete v. State*, 734 S.W.2d 144, 146 (Tex. App.-Houston [1st Dist.] 1987, no pet.) (applying *Kennedy* standard to double jeopardy claim under Texas Constitution).

33. 921 S.W.2d 696 (Tex.Crim.App.1996).

34. *Id.* at 698 (stating that "[t]he Texas Double Jeopardy Clause, like its federal counterpart, is meant to restrain the government from subjecting persons accused of crimes to the mental, emotional, and financial hardship of repeated trials for the same offense").

35. *Id.* at 699. We stated:
[W]hen the government, acting through its representatives, purposefully forces termination of a trial in order to repeat it later under more favorable conditions, we agree with the Supreme Court that the Double Jeopardy Clause is violated. But, unlike the Supreme Court, we do not think the prosecutor's specific intent is a relevant aspect of the inquiry.
*Id.* at 698–99.

36. *Id.* at 699.

37. *Id.* We explained that making the defendant's right against double jeopardy dependent entirely upon the prosecutor's specific intent to provoke a mistrial does not serve the

purpose of that constitutional right. *Id.* The distinction between a person's "intent" to cause a mistrial and his awareness or knowledge that his conduct "would require a mistrial at the defendant's request" is one that applies to motive or ultimate goal. In the first, the prosecutor's goal is to terminate a first trial which is going badly. In the second, the prosecutor's goal is to "win at any price," either by mistrial and a subsequent retrial, or by using manifestly improper means to obtain a conviction in the first trial that he likely would not have been achieved otherwise and the prosecutor is aware that his conduct requires a mistrial if the defendant should request it. *Id.*

38. *Id.* We noted that, although subjective intent is an important issue in a wide variety of contexts, "[g]auging the subjective intent of a prosecutor is not an easy thing to do." *Id.*

39. Judge Meyers' majority opinion in *Bauder* defined the type of prosecutorial "recklessness" required in this context according to the usual Penal Code definition of the culpable mental state of recklessness, *i.e.*, as being "aware but consciously disregard[ing] the risk that an objectionable event for which [the prosecutor] was responsible would require a mistrial at the defendant's request." *Id.* at 699; *see also id.* at 702 (Maloney, J., concurring); *see generally* TEX PENAL CODE § 6.03(c).

ries force only if trial and appellate courts focus primarily upon the objective facts and circumstances of the prosecutor's conduct and the events which led to that conduct.

We also emphasized, in *Bauder I*, that conditions requiring a mistrial "should be considered very unusual in any adversary system." [40] Prosecutors are entitled to, indeed expected to, zealously represent the State and to offer "prejudicial" evidence.[41] Thus, even when a prosecutor offers objectionably and unfairly prejudicial evidence or commits other errors of judgment, these acts will not suffice to necessitate a mistrial unless they are "manifestly improper prosecutorial methods." [42] It is only when the prosecutor crosses that line

and uses "manifestly improper prosecutorial methods," either deliberately or recklessly, that the Double Jeopardy Clause of the Texas Constitution will bar retrial.[43]

The *Bauder I* standard has not always proven easy to apply. In our second review of Mr. Bauder's conviction, *Ex Parte Bauder (Bauder II)*,[44] this Court held that the question of whether the trial court correctly granted a mistrial request was not the proper focus of a defendant's state constitutional double jeopardy claim.[45] But both *Kennedy* and *Bauder I* operated from the premise that it is only when the trial court is *compelled* by the prosecutorial misconduct to grant a defendant's request for a mistrial,[46] that the defendant

40. *Bauder,* 921 S.W.2d at 700.

41. *See Kennedy,* 456 U.S. at 674, 102 S.Ct. 2083 ("[e]very act on the part of a rational prosecutor during a trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt"); *United States v. Taylor,* 54 F.3d 967, 976–77 (1st Cir.1995) ("prosecutors need *not pull their punches;* they may indeed, they should present their cases to criminal juries zealously. Forcefulness in the pursuit of justice is to be admired rather than condemned"); *United States v. Wexler,* 79 F.2d 526, 529–30 (2d Cir.1935) (L.Hand, J.) ("[i]t is impossible to expect that a criminal trial *shall be conducted without some show of* feeling; the stakes are high, and the participants are inevitably charged with emotion. Courts make no such demand; they recognize that a jury inevitably catches this mood").

42. *Bauder,* 921 S.W.2d at 700.

43. *Id.*

44. 974 S.W.2d 729 (Tex.Crim.App.1998).

45. *Ex Parte Bauder,* 974 S.W.2d 729, 731–32 (Tex.Crim.App.1998). This Court in *Bauder I* had explicitly stated:

> Under this rule, the prosecutor is not accountable for mistrials when the trial judge need not have granted the defendant's mo-

tion. But he is accountable for mistrials properly granted by the trial judge when *the events making a mistrial necessary were* of his own deliberate or reckless doing. 921 S.W.2d at 699. While the issue of whether the trial court correctly granted a mistrial is not directly the issue in a double jeopardy claim, the fact that a mistrial is not an obvious necessity is nonetheless highly relevant to a consideration of the prosecutor's *mental* state in pursuing his line of inquiry or other conduct. If an appellate court doubts that a mistrial was "required" by the prosecutor's actions, then it may be reasonable to conclude that the prosecutor was not consciously aware of the likelihood that his conduct would require a mistrial.

46. *See Kennedy,* 456 U.S. at 673, 102 S.Ct. 2083 (explaining that the "intentional goading" standard was designed to protect a defendant whose motion for mistrial could not fairly be considered a result of his own free will; "[i]n such a case, the defendant's valued right to complete his trial before the first jury would be a hollow shell if the inevitable motion for mistrial were held to prevent a later invocation of the bar of double jeopardy in all circumstances"); *Bauder I,* 921 S.W.2d at 698 (stating that "when a prosecutor's deliberate or reckless conduct renders the trial before the jury unfair to such a degree that no judicial admonishment can cure it, an ensuing motion for mistrial by the defendant cannot

does not himself make a free election. Nonetheless, this Court in *Bauder II* emphasized that the critical inquiry is whether the defendant made a free choice to request a mistrial, rather than being *compelled* to do so because of the prosecutor's "manifestly improper methods ... deliberately or recklessly" committed.[47]

■ Thus, under *Bauder II,* the proper inquiry is whether the defendant was

required to move for a mistrial because the prosecutor deliberately or recklessly crossed 'the line between legitimate adversarial gamesmanship and manifestly improper methods' that rendered trial before the jury unfair to such a degree that no judicial admonishment could have cured it[.][48]

On the other hand, if the defendant's "motion for mistrial was a choice he made in response to ordinary reversible error in order to avoid conviction, appeal, reversal, and retrial," then he exercised his free choice in requesting the mistrial and double jeopardy does not bar retrial.[49]

In *State v. Lee,*[50] this Court declined to abandon the *Bauder* standard.[51] Instead, we re-affirmed that it is only when the defendant is *required* to move for a mistrial "because the prosecutor deliberately or recklessly crossed 'the line between legitimate adversarial gamesmanship and manifestly improper methods' ... that rendered trial before the jury unfair to such a degree that no judicial admonishment could have cured it" that the Texas double jeop-

ardy provision bars a retrial.[52] In *Lee,* this Court reversed the trial court and court of appeals which had both held double jeopardy barred a retrial because both lower courts "failed to take into account the appropriate substantive law when assessing the prosecutor's mental state."[53] We explained that if the prosecutor has a "legitimate" view of the law (or of the facts), even if that view is ultimately incorrect, his actions cannot be considered intentional or reckless misconduct.[54]

Thus, under *Bauder I, Bauder II,* and *Lee,* the prosecutor's *mens rea* is pivotal, just as it is under *Kennedy.* The only significant difference between the Supreme Court's decision in *Kennedy* and the *Bauder* line of cases is the specific mens rea required to set up a double jeopardy bar. Under *Kennedy,* the critical inquiry is whether the prosecutor's misconduct intended to goad the defendant into requesting a mistrial, and under *Bauder* and its progeny, a prosecutor must at least be aware that his manifestly improper misconduct is likely to result in a mistrial, but he nonetheless consciously ignores that likelihood and commits the misconduct.

■ In sum, under *Kennedy* or *Bauder* and its progeny, trial and appellate courts analyzing a double jeopardy mistrial claim make the following three-part analysis:

1) Did manifestly improper prosecutorial misconduct provoke the mistrial?[55]

---

fairly be described as the result of his free election'').

**47.** *Bauder II,* 974 S.W.2d at 732 (quoting *Bauder I,* 921 S.W.2d at 700).

**48.** *Id.*

**49.** *Id.*

**50.** 15 S.W.3d 921 (Tex.Crim.App.2000).

**51.** *State v. Lee,* 15 S.W.3d 921, 922 n. 1 (Tex. Crim.App.2000).

**52.** *Id.* at 923 (quoting *Bauder II,* 974 S.W.2d at 732).

**53.** *Id.* at 924.

**54.** *Id.* at 924–25.

**55.** Prosecutorial misconduct reasonably reaches only that conduct which is qualita-

2) Was the mistrial required because the prejudice produced from that misconduct could not be cured by an instruction to disregard? [56] And

3) Did the prosecutor engage in that conduct with the intent to goad the defendant into requesting a mistrial (*Kennedy* standard) or with conscious disregard for a substantial risk that the trial court would be required to declare a mistrial (*Bauder* standard)?

■ To erect a jeopardy bar, it is not sufficient that the prosecutor's incurably prejudicial misconduct was the result of inadvertence, sloppiness, or even simple negligence. A prosecutor's blunder that precipitates a successful motion for mistrial does not bar a retrial. As we explained in *Bauder II*, blunders, even manifestly prejudicial blunders, act as a trigger for a defendant's "free choice" mistrial request because of "ordinary reversible error" based on prosecutorial misconduct.[57] It is, after all, the right to appeal, not the double jeopardy clause, that protects defendants from trial error. "The double jeopardy clause serves not to punish prosecutorial misconduct; it simply ensures that the defendant, not the government, gets to choose whether to go to verdict." [58]

The third prong, the prosecutor's intent or recklessness, is the most problematic. As noted by Justice Powell in *Kennedy*, a person's *mens rea* is frequently difficult to divine. Intent or recklessness is rarely clear-cut. No one is immune to mistakes or lapses in judgment. Especially during the "rough and tumble" of a jury trial, courts must expect that much rule-violat-

tively more serious than simple error and connotes an intentional flouting of known rules or laws. *See, e.g., Donnelly v. DeChristoforo,* 416 U.S. 637, 647–48, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1973) (noting the distinction between "ordinary trial error of a prosecutor" and "egregious misconduct"); John Jay Douglass, ETHICAL ISSUES IN PROSECUTION 341 (1988) ("[a] violation of a rule of evidence is not ipse dixit unprofessional conduct unless it was a deliberate attempt to avoid the rule. Motive and intent play a role in determining whether the action of the prosecutor is unprofessional"); Bruce A. Green, *The Ethical Prosecutor and the Adversary System,* 24 CRIM. L. BULL. 126, 138 (1988) ("[t]he term 'misconduct' has pejorative overtones-it suggests that the prosecutor has acted erroneously with intent if not with malice"; suggesting that "the term 'misconduct' should be reserved for behavior that intentionally deviates from reasonably *attainable standards of propriety*").

If the prosecutor's conduct, viewed objectively, was not "manifestly improper," then the double jeopardy inquiry ends at this first stage. If, for example, the law itself is unsettled or the application of the law in the particular situation is debatable, the prosecutor's conduct cannot be said to be manifestly improper. *See Lee,* 15 S.W.3d at 924–25.

56. As this Court noted in *Lee:*

[v]iolations of evidentiary rules and provisions are generally curable with an instruction to disregard. *Bauder* did not change this rule. It would be extremely rare that admission of evidence in violation of a statute [or evidentiary rule] would be "so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant," in the absence of a constitutional violation. *Lee,* 15 S.W.3d at 926 n. 8 (citations omitted).

57. If the jury's guilty verdict is significantly influenced by a prosecutor asking legally improper and prejudicial questions, offering inadmissible evidence, or making improper remarks to the jury, that verdict will be reversed on appeal regardless of whether the prosecutor intentionally or recklessly struck a foul blow. As one court put it, "it hurts the defendant just as much to have prejudicial blasts come from the trumpet of the angel Gabriel." *United States v. Nettl,* 121 F.2d 927, 930 (3d Cir.1941). Double jeopardy does not bar retrial when the misconduct, causing a reversal or a mistrial, is committed by the inadvertent Gabriel; double jeopardy bars retrial only when caused by the intentional or reckless misconduct by a consciously aware Beelzebub.

58. *Beringer v. Sheahan,* 934 F.2d 110, 113 (7th Cir.1991).

ing conduct is unplanned, inadvertent, or impulsive.[59] But just as a dog knows the difference between being kicked and being stumbled over, judges can distinguish between intentional or reckless misconduct and inadvertent or negligent mistakes.

## C. Under either federal or Texas double jeopardy provisions, the defendant must prove his claim by a preponderance of the evidence.

In raising a *Kennedy/Bauder* double jeopardy claim on a pretrial writ of habeas corpus, the burden of proof is on the habeas applicant, as it is in any habeas corpus proceeding.[60] Thus, the defendant must present sufficient evidence to prove his double jeopardy claim by a preponderance of the evidence.[61] That means that the defendant must satisfy all three prongs of the analysis set out above.

Trial and appellate courts should focus primarily upon the objective facts and circumstances surrounding the events which led to the mistrial in deciding whether the prosecutor's alleged misconduct was both manifestly improper and committed with the requisite intent or recklessness. Although it is not legally required, a trial judge is well-advised to set out his factual findings on the record in support of his ruling on a *Kennedy/Bauder* double jeopardy motion. As we recently stated in a different context, courts should "show their work"[62] so that their ultimate factual and legal conclusions are clear to the parties and to reviewing courts.

Some of the objective facts and circumstances that trial and appellate courts might consider in assessing the prosecutor's *mens rea* include, but are not limited to:

1) Was the misconduct a reaction to abort a trial that was "going badly for the State"? In other words, at the time that the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal?[63]

2) Was the misconduct repeated despite admonitions from the trial court?

3) Did the prosecutor provide a reasonable, "good faith" explanation for the conduct?

---

59. *See, e.g., United States v. Etsitty*, 130 F.3d 420, 424 (9th Cir.1997) (holding that prosecutor's mischaracterization of identification evidence in summation was no reason to believe that the prosecutor intended to mislead the jury); *United States v. Millar*, 79 F.3d 338, 343 (2d Cir.1996) (noting that a reference to an exhibit not admitted in evidence was unintentional and harmless oversight); *United States v. Wihbey*, 75 F.3d 761, 770 (1st Cir. 1996) (describing a reference to defendant's failure to testify as a slip of the tongue).

60. *Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim.App.1993) (defendant-applicant bears the burden of proof at a habeas hearing to show a constitutional violation); *see also Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex.Crim. App.1995) ("[t]he burden of proof in a writ of habeas corpus is on the applicant to prove by a preponderance of the evidence his factual allegations"); *Ex parte Adams*, 768 S.W.2d 281, 287–88 (Tex.Crim.App.1989).

61. *See Anderson v. State*, 635 S.W.2d 722, 725 (Tex.Crim.App.1982); *Wockenfuss v. State*, 521 S.W.2d 630, 631 (Tex.Crim.App.1975) (defendant has burden to go forward with evidence in support of his double jeopardy allegation).

62. *Sims v. State*, 99 S.W.3d 600, 604 (Tex. Crim.App.2003) (stating that, when rejecting a defendant's factual sufficiency claim, TRAP 47.1 "suggests that the courts of appeals should 'show their work,' much as we had to when learning long division in elementary school").

63. A prosecutor may try to rescue a case that is going badly by goading a mistrial or consciously risking one with manifestly improper methods, but "[s]cuttling a trial at dockside poses few if any risks to the defendant's legitimate interests." *United States v. Jozwiak*, 954 F.2d 458, 460 (7th Cir.1992).

4) Was the conduct "clearly errone-ous"? [64]

5) Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety? [65]

6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they consistent with intentional or reckless misconduct? [66]

In reviewing the trial court's decision, appellate courts review the facts in the light most favorable to the trial judge's ruling and should uphold it absent an abuse of discretion.[67] Reviewing courts, including this Court, should "afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." [68] We also afford that same level of deference to a trial court's ruling on " 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." [69] But appellate courts review *de novo* those "mixed questions of law and fact" that do not depend upon credibility and demeanor.[70] Although reviewing courts should also grant deference to "implicit factual findings" that support the trial court's ultimate ruling, they cannot do so if they are unable to determine from the record what the trial court's implied factual findings are.

64. *See Lee*, 15 S.W.3d at 926.

65. *See, e.g., Donnelly v. DeChristoforo*, 416 U.S. 637, 645–47, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (acknowledging that prosecutor's remark during closing argument was "admittedly an ambiguous one"; although it might have been intended to convey its most prejudicial meaning, there were other, less damaging interpretations; when conflicting interpretations are present, "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning"); *United States v. Neufeld*, 949 F.Supp. 555, 560–61 (S.D.Ohio 1996) (noting that even though the government's stance on admissibility of "homosexual lover" evidence "was ultimately found unpersuasive does not render it wholly implausible or an attempt to goad a mistrial.... Hence, the Court must be cautious in labeling courtroom conduct as an intent 'to subvert the protections afforded by the Double Jeopardy Clause' "), *aff'd*, 149 F.3d 1185 (6th Cir.1998).

66. *See, e.g., Neufeld*, 949 F.Supp. at 561 ("[v]iewed through the filter of the prosecutor's subjective belief, many of the facts upon which defendants rely to indicate an intent to provoke a mistrial instead become further evidence of the strength of the prosecutor's belief. His actions show considerable consistency").

67. In reviewing a trial judge's decision to grant or deny relief on a writ of habeas corpus, we afford almost total deference to a trial judge's determination of the historical facts supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *See Ex parte Martin*, 6 S.W.3d 524, 526 (Tex.Crim.App.1999). However, if the trial court's ruling is not supported by the record, this Court may make contrary findings. *See Ex parte Adams*, 768 S.W.2d 281, 288 (Tex.Crim.App.1989) ("[i]f the record will not support the trial judge's conclusions, then this Court may make contrary findings").

68. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). The trial court may accept or reject any or all of any witness's testimony. *See Alvarado v. State*, 853 S.W.2d 17, 23 (Tex. Crim.App.1993); *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App.1991). In any habeas corpus hearing, a trial court may enter oral or written findings of fact. This practice is especially helpful if the trial court rejects unrebutted testimony as incredible or unworthy of belief.

69. *Guzman*, 955 S.W.2d at 89.

70. *Id.*

## III.

In this case, the trial court did not make any explicit findings of fact, did not comment on the prosecutor's *mens rea,* or set out the legal basis for his grant of the defendant's double jeopardy motion. He granted it without comment or explanation.

The court of appeals, left without any guidance from the trial court concerning the rationale for its ruling, relied upon two isolated pieces of information in the record, without discussing other facts and evidence in the record which are important under any *Bauder* analysis. First, it noted that the trial record showed that "the prosecutor proceeded to inquire about Spear's conversations with appellant concerning the purchase of narcotics, despite specific court instructions not to stray from the arrest summary." [71] Second, it stated that "the prosecutor knew the tapes were 'severely damaging' to appellant and that admission of the tapes 'would have substantially increased [the State's] chances of securing a conviction.'" [72] From those two pieces of record information, plus a statement that the State did not contend that "the state of the law in this case is not well-settled," the court of appeals held that "the trial judge could have concluded appellant's motion was not a choice made in response to ordinary reversible error to avoid conviction, appeal, reversal, and retrial, but was precipitated by the prosecutor deliberately or recklessly crossing the line between legitimate adversarial conduct and manifestly improper methods." [73] We cannot agree that this legal conclusion naturally flows from the objective facts and circumstances in the record.

However, because the court of appeals did not have the benefit of the three-prong analysis that we set out today or the non-exclusive, suggested objective criteria by which to gauge those three prongs, we vacate the court of appeals' decision and remand the case to that court for further proceedings consistent with this opinion.

COCHRAN, J., concurs in the judgment.

KEALSER, J., filed a dissenting opinion, in which HERVEY, J., joined.

HERVEY, J., filed a dissenting opinion, in which KELLER, P.J., and KEASLER, J., joined.

KEASLER, J., dissenting in which HERVEY, J., joined.

I have previously made my position on *Bauder*[1] clear. I still think *Bauder* is "ill-conceived, historically unsound, [and] imprecise," [2] and I continue to believe that we should overrule it.

The majority says we need not reach that issue and quotes me as authority for deciding cases on the narrowest possible ground.[3] I am glad the majority now agrees with me on that notion, and I look forward to seeing it applied in the future. Reaching out to decide unnecessary issues is an abysmal practice for appellate courts. But just as bad, if not worse, is for a court to claim that it is not reaching out and

---

71. *Ex parte Peterson,* slip op. at 7(*12).

72. *Id.* at 7–8(*5).

73. *Id.* at 8(*12).

1. *Bauder v. State,* 921 S.W.2d 696 (Tex.Crim. App.1996).

2. *State v. Lee,* 15 S.W.3d 921, 927 (Tex.Crim. App.2000) (Keasler, J., dissenting).

3. *Ante,* op. at 808 n. 3; *Watts v. State,* 99 S.W.3d 604, 615 (Tex.Crim.App.2003) (Keasler, J., concurring).

then do so anyway. That is what the majority does today.

The Court says it need not address whether *Bauder* should be overruled. It then proceeds to analyze the law in this area, "clarify[ing] the three-pronged analysis by which trial and appellate courts review *Bauder* claims."[4] But by analyzing *Bauder* in depth,[5] and by retaining *Bauder* in the three-part test,[6] the Court implicitly re-affirms *Bauder*. The Court claims that it is not addressing *Bauder's* validity, but its actions speak louder.

If the Court's opinion does not actually address whether *Bauder* should be overruled, then it should. Its discussion of the law makes clear that *Bauder* is directly before us. And *Bauder's* validity is an important issue which this Court must address. The State continues to ask us to overrule this terrible case. By refusing to directly address the issue, the Court keeps litigants and trial courts in limbo.

I respectfully dissent.

HERVEY, J., dissenting in which KELLER, P.J., and KEASLER, J., joined.

We granted discretionary review to reexamine our decision in *Bauder v. State,* 921 S.W.2d 696 (Tex.Cr.App.1996) ("*Bauder I*"). The Court, however, ducks this question choosing, instead, to "clarify" *Bauder I*. But, this is the fourth time in seven years that this Court has had to "clarify" state constitutional double jeopardy issues first addressed in *Bauder I* and this attempt fares no better than the previous three. This should be considered a strong clue that *Bauder I* is not a sound decision. The Court should overrule *Bauder I* and also hold that our state constitutional double jeopardy provision in Article I, Section 14, of the Texas Constitution, affords no greater protection than its counterpart in the Fifth Amendment to the United States Constitution and has no application to a mistrial setting or to when a criminal proceeding is terminated before a verdict is reached.

The record reflects that appellee offered to sell Undercover Detective Rose Spears some cocaine. This eventually led to the police stopping and searching appellee's car and finding cocaine in it. A single indictment charged appellee with one count of possession of a controlled substance with intent to deliver and another count of possession of a controlled substance.

Pursuant to appellee's discovery request that the prosecution produce any statements appellee had made "in connection with the charges," the prosecution produced an arrest summary. This arrest summary stated that appellee came to the attention of the police after appellee told Spears that he had some cocaine "in his possession."

On the morning of trial but before the picked jury had been empaneled and sworn, the prosecution received from Spears a videotape of the police stop of appellee's car and an audiotape of conversations that Spears had had with appellee. These tapes were beneficial to the prosecution's case. Appellee's lawyer declined the prosecution's offer to seek additional time from the trial court for appellee's lawyer to review the tapes. The prosecution told appellee's lawyer that it would not use these tapes at trial since the prosecution had not produced them during discovery.

---

4. *Ante,* op. at 807–08.

5. *Id.* at 813–18.

6. *Id.* at 816–17.

During trial, appellee did not object when the prosecution mentioned during opening statements that Spears would testify that appellee offered to sell her some cocaine. But, when the prosecution later asked Spears this question on direct examination, appellee's lawyer objected that the prosecution had not "disclosed that conversation." The prosecution responded by pointing to that portion of the arrest summary stating that appellee told Spears that he had some cocaine "in his possession." The trial court allowed the prosecution to continue questioning "[a]s long as it [was] limited to that."

When Spears testified on direct examination that appellee offered to sell her some cocaine, appellee objected that this violated the discovery order and asked for a mistrial. The trial court noted that the arrest summary contained statements "[r]egarding possession, not delivery." The trial court granted appellee's request for a mistrial so that the prosecution would have "another opportunity to give discovery to [appellee] so we can have a full disclosure to the defense about what [the prosecution intended] to present."

Later that day, appellee filed a habeas corpus application in the trial court. This habeas corpus application asserted that retrial was jeopardy-barred under the Texas Constitution as interpreted by *Bauder I* because the prosecution used "deliberate or **reckless**" methods that rendered "trial before the jury unfair to such a degree that no judicial admonishment can (sic) cure it." (Emphasis in Original). Appellee's habeas corpus application raised no federal constitutional double jeopardy claims. Appellee's sole witness at the hearing on his habeas corpus application

was the prosecutor who agreed that the tapes Spears produced on the morning of trial were "severely damaging to appell[ee]" and that the mistrial benefitted the prosecution by giving it the opportunity to get these tapes into evidence on retrial.[1] The prosecutor also agreed that securing a conviction without appellee's statements to Spears "would have been pretty tough to do." [2] On cross-examination, the prosecutor testified that she did not believe that she was doing anything objectionable by questioning Spears about whether appellee offered to sell Spears some cocaine because she believed that the arrest summary covered this.

Appellee claimed during closing arguments at the habeas hearing that the double jeopardy provision of the Texas Constitution as interpreted by *Bauder I* barred retrial because the prosecution intentionally or recklessly caused the mistrial:

As far as whether or not [the prosecutor] knew what was going on, and whether or not she knew what was going on, and whether or not she knew what she was going to do was going to cause a mistrial, she testifies that she knows that I object. She says that she knows I take the discovery order seriously. The Court assumed that everybody understands that everybody takes the discovery order seriously, and she admits in retrospect that I hadn't been given anything that could be characterized as a statement by the defendant or by my client offering to sell cocaine.

Now, as far as whether or not she could assume that there was a risk, because the intentional standard is what's set out by the federal standard, [*Bauder I*] adds recklessness as a culpable mental state

---

**1.** *Ex parte James Michael Peterson,* slip op. at 3–4, 2001 WL 1671157 (Tex.App.-Dallas, No. 05–01–01093–CR, Delivered December 20, 2001) (unpublished).

**2.** *Peterson,* slip op. at 3–4.

as to whether or not the State was reckless in causing the mistrial to occur. Your Honor, certainly "reckless" has been met here. I believe that based on the—what [*Bauder I*] says about what shows intentional conduct has been absolutely met, your Honor. They get a tape. The tape is dispositive of the case. They can't get it in, and so they try to get it in anyway, and I objected to this, your Honor. When she started talking about statements made by [appellee], I started raising my objections.

The trial court granted habeas corpus relief on the possession with intent to deliver count and denied relief on the possession count. The trial court made no findings of fact or conclusions of law.

In the State's direct appeal, the Court of Appeals decided that the double jeopardy provision of the Texas Constitution barred a retrial on the possession with intent to deliver count:

> The trial record, which was admitted into evidence at the State's request, shows the prosecutor proceeded to inquire about Spears's conversation with appell[ee] concerning the purchase of narcotics, despite specific court instructions not to stray from the arrest summary. [Footnote Omitted] The trial record also shows the prosecutor knew the tapes were "severely damaging" to appell[ee] and that admission of the tapes "would have substantially increased [the State's] chances of securing a convic-

tion." The State does not contend, nor do we conclude, the state of law in this case is not well-settled. From this record, the trial judge could have concluded appell[ee]'s motion was not a choice made in response to ordinary reversible error to avoid conviction, appeal, reversal, and retrial, but was precipitated by the prosecutor deliberately or recklessly crossing the line between legitimate adversarial conduct and manifestly improper methods. [Citation Omitted] Furthermore, the trial judge could have concluded the prosecutor's conduct rendered the trial so unfair that no judicial admonishment could have cured it. [Citation Omitted] Under these facts and circumstances, we cannot conclude the trial court erred in granting habeas relief. We resolve the State's sole issue against it.[3]

The Court exercised its discretionary authority to address grounds three and four of the State's petition for discretionary review. Ground three asserts that we should "reexamine and abandon" *Bauder I* because, among other things, the current test for determining whether a retrial in cases like this is jeopardy-barred under the Texas Constitution is unclear. Ground four asserts that the Court of Appeals did not properly analyze this case under current law.[4]

In *Bauder I*, this Court held that, when a trial court has granted a mistrial at the

---

3.  *Peterson*, slip op. at 7–8.

4.  The Court decides that it need not address ground three because "the courts below were mistaken in their application of [*Bauder I*] to this situation." *See Ex parte Peterson*, 117 S.W.3d 807 (Tex.Cr.App. delivered this date). The Court, therefore, remands the case to the Court of Appeals for further proceedings under its "clarification" of *Bauder I* (this, of course, is exactly what happened in *Bauder*

which generated five judicial opinions over five years before the case was finally disposed of).

The Court's opinion, however, does not dispose of ground three which should be dismissed without prejudice (or conditionally held) in the event that the Court of Appeals correctly decides that a subsequent prosecution is jeopardy-barred under *Bauder I*. Under these circumstances, ground three would squarely be presented for this Court to decide.

defendant's request, a retrial is jeopardy-barred under the Texas Constitution not only under conditions that bar retrial under the federal constitution but also "when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request." *Bauder I*, 921 S.W.2d at 699. In the next two sentences, *Bauder I*, 921 S.W.2d at 699, also stated:

> Under this rule, the prosecutor is not accountable for mistrials when the trial judge need not have granted the defendant's motion [for a mistrial]. But he is accountable for mistrials properly granted by the trial judge when the events making a mistrial necessary were of his own deliberate or reckless doing.[5]

Despite this clear language in *Bauder I*, our decision in *Bauder II* stated that the inquiry is "not the correctness of the ruling granting the mistrial." *Ex parte Bauder*, 974 S.W.2d 729, 731–32 (Tex.Cr.App. 1998) (*"Bauder II"*). *Bauder II*, 974 S.W.2d at 732, stated that the two questions to be decided are:

> [t]herefore, the [two] questions presented in this case are, on the one hand, whether the [defendant's] motion for mistrial was a choice he made in re-

sponse to ordinary reversible error in order to avoid conviction, appeal, reversal, and retrial. Or, on the other hand, was he required to move for mistrial because the prosecutor deliberately or recklessly crossed "the line between legitimate adversarial gamesmanship and manifestly improper methods" (citation omitted) that rendered trial before the jury unfair to such a degree that no judicial admonishment could have cured it?[6]

Our decision in *State v. Lee* is the most recent decision on this subject. *State v. Lee*, 15 S.W.3d 921 (Tex.Cr.App.2000). There this Court reaffirmed the holding in *Bauder I* that when a trial court has granted a mistrial at the defendant's request, a retrial is jeopardy-barred under the Texas Constitution "when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request." *Lee*, 15 S.W.3d at 923. *Lee* also reaffirmed "that the critical questions to be addressed in this context" are the two questions set out above from *Bauder II*. *Lee*, 15 S.W.3d at 923. Upon resolving these two questions in favor of the State, *Lee* concluded

---

**5.** On remand from *Bauder I*, the Court of Appeals decided that "the trial court need not have granted Appellant's motion for mistrial; therefore, his subsequent trial was not jeopardy-barred." *Bauder v. State*, 936 S.W.2d 19, 20 (Tex.App.-San Antonio 1996). At this time, the Court of Appeals understood *Bauder I* as calling for a two-step analysis:

> First, [the appellate court] must determine whether the trial judge "need not have granted the defendant's motion" for mistrial. This first step in the analysis is necessary because the prosecutor can only be accountable for a mistrial if the mistrial was properly granted. Second, we must determine whether the prosecutor either intended to induce the mistrial or "was aware but consciously disregarded the risk that an

objectionable event for which he was responsible would require a mistrial at the defendant's request."

*Bauder*, 936 S.W.2d at 20.

**6.** On remand from *Bauder II*, the Court of Appeals rejected the defendant's double jeopardy claim for the third time. *Ex parte Bauder*, 2 S.W.3d 376, 378 (Tex.App.-San Antonio, 1999, pet. ref'd). The Court of Appeals again decided that the mistrial was erroneously granted because a judicial admonishment could have cured any prejudice; but, it presumed from this Court's reversal in *Bauder II* of the Court of Appeals' second opinion "that neither the necessity of the mistrial nor the efficacy of a judicial admonishment is dispositive." *Bauder*, 2 S.W.3d at 378 n. 1.

that it could find no "reckless disregard that a mistrial would be reasonably certain to occur." *Lee*, 15 S.W.3d at 924–26.

Since the Court has decided that *Bauder I* needs some more clarifying, then it must agree that this Court's decisions in *Bauder I*, *Bauder II* and *Lee* are not models of clarity. And, they are not models of clarity. For example, that portion of *Bauder II* saying that the inquiry is "not the correctness of the ruling granting the mistrial" contradicts that portion of *Bauder I* saying that "the prosecutor is not accountable for mistrials when the trial judge need not have granted the defendant's motion [for a mistrial]." *Compare Bauder II*, 974 S.W.2d at 731–32, *with*, *Bauder I*, 921 S.W.2d at 699.

*Bauder II* could also be read as contradicting itself where it says that the inquiry is "not the correctness of the ruling granting the mistrial" and then later it says that courts must determine whether the prosecution recklessly did something "that rendered trial before the jury unfair to such a degree that no judicial admonishment could have cured it." *Bauder II*, 974 S.W.2d at 731–32. In many cases, however, whether a judicial admonishment could have cured whatever the prosecution did to cause a mistrial has some bearing on and is somewhat dispositive of an inquiry into the "correctness of the ruling granting the mistrial."

Our decisions in *Bauder II* and *Lee* could also be read to mean that the two questions set out in *Bauder II* are necessarily dispositive of the *Bauder I* determination of whether the prosecutor was "aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request." The Court of Appeals apparently read *Bauder II* and *Lee* this way since these are the only two questions that the Court of Appeals ad-

dressed. *Peterson*, slip op. at 7–8. It did not address nor decide whether the prosecutor was "aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request" as required by *Bauder I*.

Instead of pursuing a quixotic attempt to clarify this jurisprudence, the Court should reexamine it. This would require the Court to construe our state constitutional double jeopardy provision contained in Article I, Section 14, of the Texas Constitution. When we construe a constitutional provision, our duty is to give effect to the intent of the voters who adopted it. *See Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581, 585 (Tex.Cr.App. 1993); *see also Cobb v. State*, 85 S.W.3d 258, 268 (Tex.Cr.App.2002), cert. denied, 537 U.S. 1195, 123 S.Ct. 1256, 154 L.Ed.2d 1032 (2003) (the judiciary would exceed its constitutional authority to create new state constitutional doctrines without solid jurisprudential foundation). Our personal beliefs on whether these voters adopted a wise policy are not relevant to this determination. *See id.*

Our state constitutional double jeopardy provision obviously was patterned after its federal constitutional counterpart. *See Bauder I*, 921 S.W.2d at 698. Therefore, in construing our state constitutional double jeopardy provision, the history of the federal constitutional double jeopardy provision and United States Supreme Court decisions construing it are persuasive. The policies advanced by constitutional double jeopardy principles are usually stated as protecting a citizen against a second prosecution for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. *See United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *North Carolina v. Pearce*, 395

U.S. 711, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). These protections obviously are not implicated when a criminal proceeding is terminated before a verdict is reached.

In *Oregon v. Kennedy,* however, the United States Supreme Court decided that when government conduct at trial is "intended to goad [a] defendant into moving for a mistrial ... a defendant [may] raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982) (internal quotations omitted). The Court further stated that government conduct "that might be viewed as harassment or overreaching" does not bar a retrial under double jeopardy principles "absent [prosecutorial] intent to subvert [double jeopardy] protections." *Id.*[7] The double jeopardy interest that *Kennedy* claimed to promote was "the defendant's valued right to complete his trial before the first jury." *Kennedy,* 102 S.Ct. at 2088.

As a matter of state constitutional law, *Bauder I* claimed to bar "retrial under slightly more expansive conditions than those allowed by the United States Supreme Court" in *Kennedy. Bauder I,* 921 S.W.2d at 699. According to *Bauder I,* this includes not only government conduct "intended to induce a motion for mistrial" but also "when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was

responsible would require a mistrial at the defendant's request." *Id.* (no "distinction of constitutional significance between conduct of a prosecuting attorney in which he intends to cause a mistrial and conduct of a prosecuting attorney which he is aware is reasonably certain to result in a mistrial"). Like *Kennedy,* the double jeopardy interest that *Bauder I* claimed to promote was the defendant's valued right "to be tried in a single proceeding by the jury first selected." *Bauder I,* 921 S.W.2d at 699.

*Bauder I* also promoted the rationale that its "less subjective rule" had "practical advantages" because this rule did not depend "upon proof of the prosecutor's specific purpose [of intentionally goading the defendant into moving for a mistrial]." *Id. Bauder I* also explained that "the conditions under which retrial is barred will generally be clearer when the prosecutor's subjective intent is not an issue, permitting a more certain application of the rule in most cases." *Id.*

Even if all this were true (which for reasons later stated, it is not), it still must be remembered that Texas' double jeopardy provision was patterned after its federal counterpart and that the history of the federal double jeopardy provision is persuasive evidence of the intent of the voters who adopted our state constitutional double jeopardy provision. And, the history of the federal double jeopardy provision indicates that discharge of the jury before a verdict is reached and a defendant's

---

7. *Kennedy* is usually characterized as holding that double jeopardy principles bar a retrial when the government "intentionally goads" a defendant into successfully moving for a mistrial. In *Kennedy,* the Supreme Court apparently was applying the "former acquittal" double jeopardy protection because in other parts of its opinion it refers to a "prosecutor's actions giving rise to [a defendant's] motion for mistrial ... in order to goad the [defen-

dant] into requesting a mistrial" **when the record shows that "the jury was likely to acquit the accused."** *Kennedy,* 102 S.Ct. at 2088 n. 4, 2091 (internal quotations omitted) (emphasis supplied). So *Kennedy* might only be aimed at a prosecutor goading a defendant into moving for a mistrial when the defendant's mistrial motion is necessitated by **"prosecutorial impropriety designed to avoid an acquittal."** *See id.* (emphasis supplied).

"valued right to be tried by the first selected jury" were never intended to implicate double jeopardy principles. *See Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 2163–68, 57 L.Ed.2d 24 (1978) (Powell, J., dissenting) (thorough historical discussion of double jeopardy implications of premature discharge of the jury) and, e.g., at 2167 (concluding that courts "simply enlisted the [common-law] doctrine concerning needless discharge of juries in the service of double jeopardy principles, largely without analysis and apparently with little awareness of history").

This State's historical record supports Justice Powell's view in *Crist* and the *North Carolina v. Pearce* view that double jeopardy principles were meant only to protect against a second prosecution for the same offense after acquittal or conviction and that discharging a jury before a verdict is reached does not implicate these principles. Our constitution does not (and never did in its earlier 1845, 1861, and 1866 versions) specifically address the consequences of a mistrial. *See Lee,* 15 S.W.3d at 928 (Keasler, J., concurring).

Legislative action at the time of these early constitutions also supports the view that mistrials had no double jeopardy implications. For example, the 1856 Code of Criminal Procedure provided:

Art. 18. No person for the offense can be put in jeopardy of life or limb. **This is intended to mean that no person can be subjected to a second prosecution for the same offense, after having been once prosecuted in a Court of competent jurisdiction and duly convicted.**

Art. 19. The foregoing article will exempt no person from a second trial, who has been convicted on an illegal instrument or information, and the judgment thereupon arrested, nor where a new trial has been granted to the defendant, **nor where a jury has been discharged without rendering a verdict,** nor for any case other than that of a legal conviction.

Art. 20. By provisions of the Constitution, an acquittal of the defendant exempts him from a second trial, or a second prosecution for the same offense, however, irregular the proceedings may have been; but if the defendant shall have been acquitted upon trial, in a Court having no jurisdiction of the offense, he may, nevertheless, be prosecuted again in a Court having jurisdiction.

*See also State v. Lee,* 15 S.W.3d at 927–31, 928 (Keasler, J., concurring).

Also, during the approximately 150 years before our decision in *Bauder I,* our state constitutional double jeopardy provision had never been interpreted as having any application to the mistrial setting or to when a prosecutor recklessly or even intentionally caused a mistrial. *See Lee,* 15 S.W.3d at 927–28 (Keasler, J., concurring). It also is noteworthy that *Bauder I* did not even purport to rest its decision on the intent of the voters who adopted our state constitutional double jeopardy provision or on any other aspect of "Texas history, jurisprudence, or law." *See Cobb,* 85 S.W.3d at 268 (state constitutional interpretation should be based on "aspects of Texas history, jurisprudence, or law"). Instead, *Bauder I* used a standardless mode of state constitutional interpretation to make up a state constitutional right which for over 150 years had not existed. *But see Cobb,* 85 S.W.3d at 268; *Bauder I,* 921 S.W.2d at 703–09 (McCormick, P.J., dissenting).

In addition, *Bauder I* is simply wrong to claim that it bars "retrial under slightly more expansive conditions than those allowed by the United States Supreme Court" in *Kennedy. See Bauder I,* 921

S.W.2d at 699. *Bauder I* is also wrong to claim that there is no "distinction of constitutional significance between conduct of a prosecuting attorney in which he intends to cause a mistrial and conduct of a prosecuting attorney which he is aware is reasonably certain to result in a mistrial." *See id.*[8]

*Bauder I's* "culpable mental state" is completely different than that discussed in *Kennedy*. *Kennedy's* culpable mental state involves the prosecutor's intent to subvert double jeopardy protections. *Kennedy,* 102 S.Ct. at 2089 (barring retrial when prosecution "goads" defendant to move for mistrial with intent "to subvert [double jeopardy] protections"). *Bauder I's* culpable mental state, however, involves only whether a prosecutor intentionally or recklessly caused a mistrial and not whether a prosecutor intentionally or even recklessly subverts double jeopardy protections. These are two completely different tests. It is conceivable that a prosecutor could recklessly or even intentionally cause a mistrial without having any intent to subvert double jeopardy protections. *Bauder I,* therefore, can bar retrial under greatly expanded conditions than those allowed by the Supreme Court in *Kennedy.*[9]

*Bauder I* is also wrong to claim that its rule "will generally be clearer when the prosecutor's subjective intent is not an issue, permitting a more certain application of the rule in most cases." *See Bauder I,* 921 S.W.2d at 699. But *Bauder I's* main holding—that a retrial is barred "when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request"-literally makes the prosecutor's subjective intent an issue. This standard is essentially a recklessness standard which our law defines as a subjective mental state. *See* Section 6.03(c).

And, *Bauder I's* own history undermines its claim that it permits "a more certain

8. State statutory law recognizes a significant distinction between intentional and reckless mental states. *Compare* Section 6.03(a) (definition of intentional culpable mental state), *with,* Section 6.03(c) (definition of reckless culpable mental state).

9. Viewed in the light most favorable to the trial court's ruling, the evidence and reasonable inferences therefrom arguably would support findings that the prosecutor was "goading" appellee into moving for a mistrial with the "intent to subvert [appellee's] double jeopardy protections" by avoiding an acquittal on the possession with intent to deliver count since the prosecution apparently had little or no evidence that was produced in response to the discovery order that would have supported a guilty verdict on that count. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Cr.App.1997) (appellate courts should defer to trial court's implied fact findings that the record supports). Even though the evidence might support these findings for purposes of establishing a federal constitutional double jeopardy claim under *Kennedy,* this evidence arguably does not support a finding that the prosecutor was "aware but consciously disregarded the risk" that her questions to Spears concerning whether appellee offered to sell her cocaine "would require a mistrial at the [appellee's] request"for purposes of establishing a state constitutional double jeopardy claim under *Bauder I.* The prosecutor could have believed that the trial court, instead of granting a mistrial, would delay the trial to supplement discovery to provide appellee with an opportunity to defend against the "new" evidence that appellee offered to sell Spears some cocaine. *See Smith v. State,* 779 S.W.2d 417, 431 (Tex.Cr.App.1989). The law, at least, appears not to be settled as to what a trial court can do under these circumstances which, pursuant to our decision in *Lee,* would be fatal to appellee's state constitutional double jeopardy claim under *Bauder I. See Lee,* 15 S.W.3d at 925–26; *Smith,* 779 S.W.2d at 431. *Bauder I,* therefore, can also restrict the conditions under which a retrial would be barred under *Kennedy.* In the final analysis then, *Bauder I* can bar retrial when double jeopardy interests would permit it and it can permit retrial when double jeopardy interests would bar it.

application of [its] rule in most cases." *Bauder I* generated five judicial opinions over a period of five years before the case was finally disposed of adversely to the defendant.[10] That this is the fourth time in seven years that this Court has had to clarify *Bauder I* further undermines *Bauder I's* claim that it permits "a more certain application of [its] rule in most cases."

And, it is highly significant that the Court's opinion in this case retreats from these rationales and candidly admits that *Bauder I* "has not always proven easy to apply" and that the "prosecutor's *mens rea* is pivotal." *See Peterson,* slip op. at 15 (proof of *Bauder I's* "reckless act, is no less subjective a standard than proof of [*Kennedy's*] intentional act"), and at 16 (acknowledging that the *"Bauder I* standard has not always proven easy to apply"). The unclarified holding in *Bauder I* has, therefore, been transformed into a made-up constitutional rule in search of a rationale to justify its existence.

As another aid to understand why *Bauder I* should be overruled, it is only necessary to summarize this Court's current case law and how it has been and will be applied. *Bauder I,* 921 S.W.2d at 699, held:

> [w]e therefore hold that a successive prosecution is jeopardy barred after declaration of a mistrial at the defendant's request, not only when the objectionable conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request. Under this rule, the prosecutor is not accountable

for mistrials when the trial judge need not have granted the defendant's motion. But he is accountable for mistrials properly granted by the trial judge when the events making a mistrial necessary were of his own deliberate or reckless doing.

But, just two years later, *Bauder II,* 974 S.W.2d at 731, 733, decided that the "question is not the correctness of the ruling granting the mistrial;" rather, the questions presented:

> ... are, on the one hand, whether the [defendant's] motion for mistrial was a choice he made in response to ordinary reversible error in order to avoid conviction, appeal, reversal, and retrial. Or, on the other hand, was he required to move for mistrial because the prosecutor deliberately or recklessly crossed "the line between legitimate adversarial gamesmanship and manifestly improper methods" (citation omitted) that rendered trial before the jury unfair to such a degree that no judicial admonishment could have cured it?

Then, our decision in *Lee,* 15 S.W.3d at 925–26, resolved the state constitutional double jeopardy question with a discussion about the defendant's "prearrest, *pre-Miranda* silence" which is far afield from anything that double jeopardy principles are meant to protect. *Lee,* 15 S.W.3d at 925–26, decided that:

> Because the prosecutor's statement [that resulted in a mistrial at the defendant's request] concerning [the defendant's] prearrest, pre-*Miranda* silence was not clearly erroneous, it cannot be said that there was any intent to induce a mistrial or reckless disregard that a

---

**10.** *See Bauder v. State,* 880 S.W.2d 502 (Tex. App.San Antonio 1994); *Bauder v. State,* 921 S.W.2d 696 (Tex.Cr.App.1996); *Bauder v. State,* 936 S.W.2d 19 (Tex.App.-San Antonio 1996); *Ex parte Bauder,* 974 S.W.2d 729 (Tx. Cr.App.1998); *Ex parte Bauder,* 2 S.W.3d 376 (Tex.App.-San Antonio 1999).

mistrial would be reasonably certain to occur.

Today, the Court, as it has at least three times before, reaffirms the unclarified holding of *Bauder I* that when a defendant has successfully moved for a mistrial, a retrial is jeopardy-barred under the Texas Constitution not only under the *Kennedy* standard but also "when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request." *See Peterson*, slip op. at 14. The Court explains that this standard is satisfied when a prosecutor "either deliberately or recklessly" uses "manifestly improper prosecutorial methods." *See Ex parte Peterson*, slip op. at 16.

The Court further explains that *Bauder I* requires a three-part analysis in analyzing a double jeopardy mistrial claim under *Kennedy* and *Bauder I* and all the other subsequent opinions that were supposed to have clarified *Bauder I*.

1) Did manifestly improper prosecutorial misconduct provoke the mistrial? [Footnote Omitted].

2) Was the mistrial required because the prejudice produced from that misconduct could not be cured by an instruction to disregard? [11] [Footnote Omitted] And

3) Did the prosecutor engage in that conduct with ... conscious disregard for a substantial risk that the trial court would be required to declare a mistrial (*Bauder* standard)?

*See Peterson*, slip op. at 19–20.[12]

The Court's opinion also sets out various nonexhaustive factors "that trial and appellate courts might consider in assessing the prosecutor's *mens rea*" apparently under part three of its analysis although the Court's opinion states that they are "suggested criteria by which to gauge [all] three prongs." *See Peterson*, slip op. at 26.

1) Was the misconduct a reaction to abort a trial that was "going badly for the State"? In other words, at the time that the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal? [Footnote Omitted].

2) Was the misconduct repeated despite admonitions from the trial court?

3) Did the prosecutor provide a reasonable, "good faith" explanation for the conduct?

4) Was the conduct "clearly erroneous"? [Footnote Omitted].

5) Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety? [Footnote Omitted]

6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they consistent with intentional or reckless misconduct? [Footnote Omitted].

*See Peterson*, slip op. at 22–23.

It can hardly be disputed that none of this does much to clarify *Bauder I*. *Bauder I* will continue to be difficult to apply and will do little to promote (if not actually frustrate) the interests protected by double jeopardy principles. *See, e.g., Bauder*, 2 S.W.3d at 378 n. 1 (noting probable contradictions between this Court's decisions in *Bauder I* and *Bauder II*). *Bau-*

11. This essentially is what this Court rejected in *Bauder II,* 974 S.W.2d at 731–32.

12. It is unclear whether all three of these factors must be met to satisfy *Bauder I* and its clarifying progeny. Perhaps the Court can clarify this in a later opinion.

*der I,* therefore, contains the seeds for its own demise where it stated:

> As we see it, there is no wisdom in a double jeopardy standard of decision which is at once difficult to apply and does little to promote interests protected by the Double Jeopardy Clause.

*See Bauder I,* 921 S.W.2d at 699.

Finally, the Court's opinion states that, in reviewing a trial court's ruling such as the one here with no explicit fact findings, appellate courts cannot defer to a trial court's "implicit factual findings" if appellate courts "are unable to determine with any certainty what the trial court's implied factual findings are from the record." *See Peterson,* slip op. at 24–25. The applicable standard of review in cases like this, however, requires the appellate court to imply the necessary fact findings to support the trial court's legal ruling and then determine whether the record supports these implied fact findings. *See Carmouche v. State,* 10 S.W.3d 323, 328 (Tex.Cr.App. 2000) (appellate standard of review requires appellate court to assume "that the trial court made implicit findings of fact supported in the record that buttress its [legal] conclusion"); *Guzman,* 955 S.W.2d at 89; *see also State v. Ross,* 32 S.W.3d 853, 855–58 (Tex.Cr.App.2000) (appellate court deferred to trial court's "implicit [credibility] finding" even though appellate court was "unable to determine with any certainty what the trial court's implied factual findings [were] from the record"). This standard does not require the appellate court to perform the impossible task of determining "with any certainty what the trial court's implied factual findings are from the record." Instead, it requires the appellate court to defer to "implicit factual findings" that the record supports.

In this case, for example, the Court of Appeals arguably could affirm the trial court's ruling on the basis that the ques-

tion of whether the prosecutor "was aware but consciously disregarded the risk that an objectionable event for which [s]he was responsible would require a mistrial at the defendant's request" is one of those application of law to fact questions whose resolution turns solely on an evaluation of credibility and demeanor. *See Ross,* 32 S.W.3d at 857; *Guzman,* 955 S.W.2d at 89. And, resolving the issue this way would squarely present ground three for this Court to decide.

I respectfully dissent.