Michael LaDay ROBINSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–02–647–CR.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

July 1, 2004.

Rodney E. Moton, Houston, for appellant.

Kurt Sistrunk, Criminal Dist. Atty., B. Warren Goodson, Jr., Asst. Criminal Dist. Atty., Galveston, for appellee.

Before Justices HINOJOSA, YAÑEZ, and GARZA.

## OPINION

Opinion by Justice YAñez.

Following a mistrial, appellant, Michael LaDay Robinson, was convicted of the fel-

ony offense of aggravated sexual assault of a child [1] in a second jury trial. He was sentenced to thirty years imprisonment. In two issues, he contends: (1) his conviction is barred by the double jeopardy provisions of the Fifth Amendment to the United States Constitution and article 1, section 14 of the Texas Constitution; and (2) he was denied effective assistance of counsel when trial counsel failed to raise double jeopardy prior to the commencement of the trial which ultimately led to his conviction. We affirm.

## Background

Robinson's first trial for aggravated sexual assault of a child ended in a mistrial after confusion arose as to the prosecution's outcry witness early in the trial's first day of witness questioning.

During June of 2000, the eleven year-old child victim involved in the incident attempted to call her mother from their home phone at the Fountain Lakes Apartments in Texas City, Texas and discovered the phone did not work. She went with two adult friends, LaTroy Miles ("LaTroy") and Antonio Huey ("Antonio"), and her dog, to appellant's apartment in the same complex to use the phone, with no success of reaching her mother. The three decided to leave and try the phone again later. The victim went to the kitchen to retrieve the dog, after which LaTroy and Antonio walked out the front door with the dog. Appellant closed and locked the front door to the apartment before the victim was able to exit the apartment. The victim testified that while locked inside, appellant pushed her down on the couch and engaged in forced sexual intercourse over her objections.

The victim fled the apartment when appellant went to the bathroom and later informed LaTroy and Antonio that "he raped me." She later confided in Carla Z. Belle, a secretary at her school, in January of 2001, and gave Belle a full account of the incident. Belle then notified the mother and the authorities. On March 12, 2001, the victim gave birth to a child. DNA analysis presented at the second trial estimated that appellant's likelihood of paternity was 99.9992 percent.

Prior to commencement of appellant's first trial, the State filed a notice of intent to use the statement of a child abuse victim, naming Belle as the witness testifying to the statement of the victim, pursuant to statutory requirements.[2] After the four-

---

1. *See* TEX. PEN.CODE ANN. § 22.021(a)(1)(B) (Vernon Supp.2004).

2. *See* TEX.CODE CRIM. PROC. ANN. art. 38.072 § 2 (Vernon Supp.2004). This section provides that:
   (a) This article applies only to statements that describe the alleged offense that:
   (1) were made by the child against whom the offense was allegedly committed; and
   (2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense.
   (b) A statement that meets the requirements of Subsection (a) of this article is not inadmissible because of the hearsay rule if:
   (1) on or before the 14th day before the date the proceeding begins, the party intending to offer the statement:

(A) notifies the adverse party of its intention to do so;
(B) provides the adverse party with the name of the witness through whom it intends to offer the statement; and
(C) provides the adverse party with a written summary of the statement;
(2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and
(3) the child testifies or is available to testify at the proceeding in court or in any other manner provided by law.
*See id.*

teen-day notification deadline had passed, the State informed the defense counsel that the named outcry witness would not be used as an outcry witness. The State did not name a new outcry witness at that time.

During direct examination of the victim, the prosecution asked what she had told Ms. Belle regarding the incident, to which defense counsel objected on the basis of relevance. During the ensuing discussion between the trial judge and counsel, the prosecutor revealed that he learned from the victim only days before trial that there was an intervening outcry witness, the mother's boyfriend at the time of the incident, Arthur Miles ("Miles"). The prosecutor explained that the confusion regarding the outcry witness and the lateness of the discovery was the reason he had "backed off" Belle as his outcry witness. He also explained that he did not disclose the new potential outcry witness to the defense because he "did not feel it was exculpatory or mitigating in any shape or form."

After asking for a mistrial, defense counsel suggested getting Miles instanter. After speaking with Miles during a break in the hearing, the prosecutor informed the court and defense counsel that Miles could testify, and also that Miles recalled having a conversation with the victim, but did not recall the conversation regarding the incident or the appellant. Despite this option, the judge ordered a mistrial and excused the jury. Defense counsel did not object to the second trial or file a pre-trial application for the writ of habeas corpus.

### Applicable Law

■■■ "[The] question of double jeopardy is fundamental and may be raised for the first time on appeal." *Garner v. State,*

858 S.W.2d 656, 658 n. 1 (Tex.App.-Fort Worth 1993, pet. ref'd). The double jeopardy clauses of the Fifth Amendment of the United States Constitution and article 1, section 14 of the Texas Constitution "protect a criminal defendant from repeated prosecutions for the same offense." *Ex Parte Peterson,* 117 S.W.3d 804, 819 (Tex.Crim.App.2003) (citing *Oregon v. Kennedy,* 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)); *Bauder v. State,* 921 S.W.2d 696, 698 (Tex.Crim.App. 1996). However, double jeopardy does not prevent "multiple trials of a single criminal charge if the first trial resulted in a mistrial that: (1) was justified under the manifest necessity doctrine; or (2) was requested or consented to by the defense, absent prosecutorial misconduct which forced the mistrial." *Peterson,* 117 S.W.3d at 810–11.

■■■ Under the federal standard for determining whether prosecutorial misconduct forced the mistrial, the key inquiry is whether the misconduct was intended to goad the defendant into requesting the mistrial. *Id.* (citing *Kennedy,* 456 U.S. at 676, 102 S.Ct. 2083). Under the Texas standard, "a prosecutor must at least be aware that his manifestly improper misconduct is likely to result in a mistrial, but he nonetheless consciously ignores that likelihood and commits the misconduct." *Id.* at 816. Under both standards, the prosecutor's mental state, or *mens rea,* is pivotal to a reviewing court determining whether there is a double jeopardy bar. *Id.*

■■■ The Texas Court of Criminal Appeals recently attempted to clarify the double jeopardy standard following a mistrial requested by the defendant by setting forth a three-part analysis:

1) did manifestly improper prosecutorial conduct provoke the mistrial?;[3]

**3.** "Prosecutorial misconduct reasonably

reaches only that conduct which is qualita-

2) was the mistrial required because the prejudice produced from that misconduct could not be cured by an instruction to disregard?;[4] and

3) did the prosecutor engage in that conduct with the intent to goad the defendant into requesting a mistrial ... or with conscious disregard for a substantial risk that the trial court would be required to declare a mistrial.

*Id.*

The prosecutor's incurably prejudicial misconduct must be caused by more than inadvertence, sloppiness, or even simple negligence to bar retrial based on double jeopardy. *Id.* at 817. The misconduct must be intentional or reckless, and the reviewing court must take into account the appropriate substantive law. *See State v. Lee,* 15 S.W.3d 921, 924 (Tex. Crim.App.2000). If the prosecutor has a legitimate view of the law or facts, even if the view is ultimately incorrect, his actions cannot be considered intentional or reckless misconduct. *Id.* at 924–25.

In determining the prosecutor's *mens rea,* the court "should focus primarily upon the objective facts and circumstances surrounding the events which led to the mistrial in deciding whether the prosecutor's alleged misconduct was both manifestly improper and committed with the requisite intent or recklessness." *Peterson,* 117 S.W.3d at 818. The court of criminal appeals suggests that the courts might consider the following facts and circumstances in assessing a prosecutor's *mens rea:*

1) Was the misconduct a reaction to abort the trial that was "going badly for

the State," or, at the time the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal?

2) Was the misconduct repeated despite admonitions from the court?

3) Did the prosecutor provide a reasonable, "good faith" explanation for the conduct?

4) Was the conduct "clearly erroneous"?

5) Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety?

6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they consistent with intentional or reckless misconduct?

*Id.* at 818–19.

Therefore, we conclude that in order to assess whether appellant's second trial was barred by jeopardy, we must first look at whether the mistrial was granted due to prosecutorial misconduct.

Appellant argues that the prosecutor's failure to provide notice to the defense of a possible outcry witness was intentional or reckless conduct which caused the first trial to end in a mistrial, thereby violating appellant's rights under the Texas and United States Constitutions. The State responds that the prosecutor's conduct was not manifestly improper and that the trial court was not required to grant the mistrial because the use of an outcry witness was essentially abandoned by the prosecution, and the new witness was available instanter and may have been beneficial to the appellant's case.

---

tively more serious than simple error and connotes an intentional flouting of known rules or laws." *Ex Parte Peterson,* 117 S.W.3d 804, 816–17 (Tex.Crim.App.2003).

**4.** "Violations of evidentiary rules and provisions are generally curable with an instruction to disregard." *Peterson,* 117 S.W.3d at 816–17 n. 56 (quoting *State v. Lee,* 15 S.W.3d 921, 926 n. 8 (Tex.Crim.App.2000)).

The record demonstrates that the prosecutor had no intention of calling Miles to testify or of using him as an outcry witness, and that he had a "good faith" basis to believe that Miles had no exculpatory evidence to offer in the case. The prosecutor also provided notice before trial that he would not be utilizing his named outcry witness, Carla Belle. Such notice, in essence, placed appellant's trial counsel on notice that the prosecution was abandoning the use of any outcry witness testimony. The record also reflects that the prosecutor did not intentionally flout any known rules or laws during his examination of the victim or during the following discussion with the court and opposing counsel. At worst, the prosecutor used poor judgment by failing to notify appellant's trial counsel of a possible new witness, and by choosing to abandon his outcry witness because of the newly-acquired information. Based on the circumstances and evidence in this case, we conclude that appellant's burden has not been met under *Peterson* because he has failed to show that the prosecutor's conduct was "manifestly improper." *See id.* at 816–17. We, therefore, overrule appellant's first point of error and hold that double jeopardy did not bar retrial of appellant's case.[5]

In his second point of error, appellant contends that he received ineffective assistance of counsel because his trial counsel did not raise double jeopardy objections prior to the commencement of his second trial. We disagree.

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), sets forth the standard of review for effectiveness of counsel. *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). *Strickland* requires a two-part inquiry.

*Id.* The defendant must first show that counsel's performance was deficient, in that it fell below an objective standard of reasonableness. *Id.* Second, the defendant must further prove there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

The determination regarding whether defendant received effective assistance of counsel must be made according to the facts of each case. *Id.* at 813. An appellate court looks to the totality of the representation and the particular circumstances of the case in evaluating counsel's effectiveness. *Id.*

The appellant bears the burden of proof by a preponderance of the evidence that counsel was ineffective. *Id.* There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* To defeat the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.; see also McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996).

Given the standard of review for ineffectiveness of counsel, appellant has not met his burden to prove trial counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense. The record does not reflect counsel's reasons for not raising double jeopardy prior to the commencement of the second trial. However, "the question of double jeopardy is

---

5. *See Peterson,* 117 S.W.3d at 816 n. 55 (stating the double jeopardy inquiry ends at the first stage "if the prosecutor's conduct, when viewed objectively, was not 'manifestly improper.' ").

fundamental and may be raised for the first time on appeal." *Garner*, 858 S.W.2d at 658. Therefore, no objection is necessary to preserve the issue for appeal, and the appellant suffered no prejudice from his counsel's failure to object. More importantly, as we previously stated, jeopardy did not attach in this case because the appellant requested the mistrial of his own free choice, and not because of any prosecutorial misconduct, which removed all bars to reprosecution. *See Peterson*, 117 S.W.3d at 816 n. 55. As such, appellant's counsel had no valid objection to make prior to commencement of the second trial. Appellant's second point of error is overruled.

The JUDGMENT of the trial court is AFFIRMED.