Opinion Issued June 16, 2005








     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01251-CR




FRANK LESTER MATTHEWS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 176th District Court
Harris County, Texas
Trial Court Cause No. 741954A

 
MEMORANDUM OPINION
          Appellant, Frank Lester Matthews, appeals the trial court’s order denying his
post-conviction application for a writ of habeas corpus, in which appellant contended
that he was actually innocent and that he had received ineffective assistance of
counsel. We determine whether the trial court erred in denying appellant’s
application for a writ of habeas corpus on actual innocence grounds. We affirm.
Procedural Background
          Appellant pleaded not guilty to the felony offense of injury to a child. At the
1999 trial, a jury found appellant guilty, and the trial court assessed his punishment
at five years in prison, suspended for five years of community supervision, and a $500
fine. Appellant’s conviction was affirmed by the Twelfth Court of Appeals on May
5, 1999.


 
          On June 30, 2004, appellant filed an application for a writ of habeas corpus.
The habeas court held a hearing, at which it asked if the State or appellant had any
further evidence to present besides the complainant’s affidavit presented by appellant. 
After both sides declined to present further evidence, the court stated that it had
reviewed the application and the response and that it was denying appellant’s
requested relief.
Denial of Relief
          In his sole issue, appellant contends that the trial court erred in denying his
application for a writ of habeas corpus based on his claim of actual innocence. 
Appellant does not challenge the trial court’s denial of his application based on
ineffective assistance of counsel Specifically, appellant contends that no reasonable
juror would have convicted him of the offense in light of the complainant’s affidavit,
executed in December of 2003, recanting her trial testimony that appellant had
touched her with a stun gun. A.Standard of Review
          In reviewing a trial court’s decision to grant or to deny relief on a petition for
writ of habeas corpus, we afford almost total deference to the court’s determination
of the historical facts that are supported by the record, especially when the fact
findings are based on an evaluation of credibility and demeanor. Ex parte Peterson,
117 S.W.3d 804, 819 (Tex. Crim. App. 2003); State v. Nkwocha, 31 S.W.3d 817, 820
(Tex. App.—Dallas 2000, no pet.). We afford the same amount of deference to the
trial court’s rulings on “applications-of-law-to-fact questions” if the resolution of
those ultimate questions turns on an evaluation of credibility and demeanor. Ex parte
Peterson, 117 S.W.3d at 819; Nkwocha, 31 S.W.3d at 820. However, if the resolution
of those ultimate questions turns on an application of legal standards, we review the
determination de novo. Ex parte Peterson, 117 S.W.3d at 819; Nkwocha, 31 S.W.3d
at 820. Absent a clear abuse of discretion, we accept the trial court’s decision
whether to grant the relief requested in the habeas corpus petition. Ex parte Peterson,
117 S.W.3d at 819; Nkwocha, 31 S.W.3d at 820.
B.      The Law
          Claims of actual innocence are categorized as either Herrera-type claims or
Schlup-type claims. See Schlup v. Delo, 513 U.S. 298, 115 S. Ct. 851 (1995);
Herrera v. Collins, 506 U.S. 390, 113 S. Ct. 853 (1993). A Herrera-type claim
involves a substantive claim in which the applicant asserts his bare innocence based
solely on newly discovered evidence. Ex parte Franklin, 72 S.W.3d 671, 675 (Tex.
Crim. App. 2002). A Schlup-type claim is a procedural claim in which the applicant’s
claim of innocence does not provide a basis for relief, but is tied to a showing of
constitutional error at trial. Id.
          A conviction that results from a constitutionally error-free trial is entitled to the
greatest respect. Id. at 677-78. Therefore, an applicant asserting a Herrera-type
claim based on newly discovered evidence must show by clear and convincing
evidence that no reasonable fact finder would have convicted him in light of the
newly discovered evidence. Id. at 677; Ex parte Elizondo, 947 S.W.2d 202, 209 (Tex.
Crim. App. 1996). To meet this burden, the applicant must present evidence that
affirmatively proves his innocence. Ex parte Franklin, 72 S.W.3d at 678. Once the
applicant provides such evidence, it is then appropriate to proceed with a
determination of whether the applicant can prove by clear and convincing evidence
that no reasonable juror would have convicted him in light of the newly discovered
evidence. Id. Such evidence may include trustworthy witness recantations,
exculpatory scientific evidence, trustworthy eyewitness accounts, and critical physical
evidence. See Schlup, 513 U.S. at 324, 115 S. Ct. 851. To determine whether a
habeas applicant has reached this level of proof, the convicting court weighs the
evidence of the applicant’s guilt against the new evidence of innocence. Ex parte
Tuley, 109 S.W.3d 388, 390 (Tex. Crim. App. 2002).
C.      Appellant’s Actual Innocence Claim
          Appellant does not raise any procedural claims attacking the constitutionality
of his conviction. Rather, he claims that newly discovered evidence shows that he is
actually innocent of the offense for which he was convicted. Therefore, he is raising
a Herrera-type claim. See Ex parte Franklin, 72 S.W.3d at 677. Appellant was convicted of injury to a child for using a stun gun on the
complainant, T.M., who lived with her mother, Angel, and appellant, who was
Angel’s common-law husband. At trial, T.M. testified that, on December 30, 1996,
while Angel and appellant were not home, she had some friends over to visit in
violation of house rules. T.M. testified that, when Angel and appellant returned home
and found that she had broken the rule, appellant began to yell at her, to push her, and
to kick her. Angel then called T.M. into the kitchen, and while T.M. was there,
appellant came in with a stun gun and shocked T.M. on her left upper leg. T.M.
testified that it hurt, caused numbness in her leg, and caused her to limp for a few
minutes. 
          At trial, T.M.’s younger sister, A.M., corroborated T.M.’s testimony by
testifying that she saw appellant push and kick T.M. Although she did not see
appellant touch T.M. with the stun gun, A.M. stated that she saw appellant retrieve
the stun gun and follow T.M. into the kitchen. Then, A.M. heard the sound of the
stun gun, heard T.M. cry out, and saw T.M. come out of the kitchen limping. T.M.’s
biological father corroborated T.M.’s allegations at trial by testifying that Angel had
admitted to him that appellant had used the stun gun on T.M. Detective Kelly, who
investigated the case, testified at trial that appellant admitted that he had gotten the
stun gun to scare T.M. Detective Kelly also testified that she had spontaneously gone
to the girls’ school and interviewed them separately and that they had recounted the
same series of events to her. Detective Kelly also testified the school nurse had
approached her and stated that T.M. had come to see her and complained that her side
was hurting, but would not give an explanation for it. Detective Kelly testified that
the nurse told her that she observed some slight swelling on T.M.’s left side.
          At trial, the defense presented the testimony of appellant and Angel, who both
testified that appellant did not push or kick T.M. and that appellant did not shock
T.M. with the stun gun. Ruth Ann Ellington also testified for the defense at trial and
stated that she had sold stun guns for eight years. Ellington testified that, to
administer a shock, the stun gun would have to be used within less than one inch from
a person’s clothing or skin.  
          In T.M.’s affidavit recanting her trial testimony, that appellant presented in
connection with his habeas application, T.M. stated that appellant brought the stun
gun into the kitchen and that it went off behind her, but that it never touched her. 
T.M. averred that she had lied about the stun gun’s being used because she had
wanted to please her biological father and that he had spanked her when she tried to
tell him that appellant had not shocked her with the stun gun. 
D.      Analysis
          Although appellant’s new evidence was important, it was not dispositive of his
claim of innocence. Because the habeas court is in a better position to make
determinations of credibility in this case, we should defer to those findings if they are
supported by the record, even when the evidence is submitted by affidavit. See Ex
parte Thompson, 153 S.W.3d 416, 417-18 (Tex. Crim. App. 2005). 
          In this case, the findings of the habeas court are supported by the record. At
trial, much testimony was elicited, including that of T.M.’s mother, who stated that
T.M. was a habitual liar. The habeas court in this case could have deemed T.M.’s
recantation as incredible and chosen to believe that the plentiful evidence of guilt
adduced at trial was true. T.M.’s testimony at trial was corroborated by her sister,
A.M., who did not recant her testimony. T.M.’s testimony was also corroborated by
that of Detective Kelly, who testified that T.M. and A.M. told her identical stories
regarding the events that had occurred, without their knowing that the other had been
interviewed, and provided written statements regarding the events. Moreover,
Detective Kelly testified that the school nurse revealed that T.M. had come to her
complaining of pain in her left side, where appellant had shocked her. Additionally,
T.M.’s biological father testified that Angel had admitted to him that appellant had
shocked T.M. with the stun gun. Presented with the above evidence, even in
conjunction with T.M.’s recantation, we hold that the habeas court’s finding that
appellant had not met his burden of proving by clear and convincing evidence that no 
reasonable juror could have found appellant guilty in light of the newly discovered
evidence is supported by the record. 
          The record shows that the habeas court performed the proper analysis of
appellant’s claim for relief, weighing the newly discovered evidence against the
evidence adduced at trial and determining whether a reasonable juror would convict
him in light of the new evidence. 
          We overrule appellant’s sole issue. 
 

Conclusion
          We affirm the judgment of the trial court. 


 
 
                                                             Tim Taft                                                                                                            Justice
 
Panel consists of Justices Taft, Alcala, and Higley.
Do not publish. Tex. R. App. P. 47.2.