COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS







 EX PARTE:

GEORGE PEYTON LAMBETH





§
 
§
 
§
 
§
 
§

§


No. 08-05-00213-CR

Appeal from
143rd District Court

of El Paso County, Texas

(TC # 20040D05922)



 

 

 




O P I N I O N

            George Lambeth appeals the denial of his application for writ of habeas corpus. For the
following reasons, we affirm.
BACKGROUND
            On July 22, 2003, Lambeth pled guilty to driving while intoxicated, third or more offense. 
The trial court assessed punishment at six years in the Institutional Division of the Texas Department
of Criminal Justice, which was then probated to six years community supervision, including ten days
at the El Paso County Detention Facility as a condition of probation, and a $500 fine.  
            On November 23, 2004, the State filed a motion to revoke Lambeth’s probation arguing that
he failed to comply with terms “a.” and “x.” of his probation by: (a.) committing an offense that was
against the law of this state or any other state, or of the United States of America, and (x.) operating
a motor vehicle that was not equipped with a device that uses deep-lung breath analysis mechanism. 
The relevant portions of the motion to revoke alleged: 
3a. Thereafter, to-wit: on or about the 28th day of August, 2004, in the County of
El Paso and State of Texas, the said defendant, GEORGE LAMBETH, did then and
there commit the offense of AGGRAVATED ASSAULT AGAINST A PUBLIC
SERVANT against Steve Cox, whom the Defendant knew was a public servant while
he was discharging an official duty or in retaliation or on account of an exercise of
official power or performance of an official duty as a public servant, by intentionally
and knowingly threatening him with imminent bodily injury, to wit: by attempting
to crash his vehicle into a vehicle driven by Steve Cox, to wit: a marked El Paso Fire
Department Unit No. 172, and the Defendant did use and exhibit a deadly weapon,
to wit: a motor vehicle, during the commission of offense, in violation of condition
‘a.’ of the terms and conditions of his community supervision.
 
3a-1. Further, to-wit: on or about the 28th day of August, 2004, in the County of
El Paso and State of Texas , the said defendant, GEORGE LAMBETH, did then and
there operate a motor vehicle with an altered inspection sticker, in violation of
condition ‘a.’ of the terms and conditions of his community supervision.
 
3x. Further, to-wit: on or about the 28th day of August, 2004, in the County of
El Paso and State of Texas, the said defendant, GEORGE LAMBETH, did then
and there operate a motor vehicle that was not equipped with a device that uses a
deep-lung breathing analysis mechanism, in violation of condition ‘x.’ of the terms
and conditions of his community supervision.
 
4. The State alleges that by virtue of the circumstances set out in the foregoing
paragraph ‘3’, the named defendant has violated the terms of his adult probation and
that the same therefore should be revoked by the Court. 
 
WHEREFORE, the State prays that capias issue to the end that such probation be
revoked by the Court. 

On November 30, 2004, a grand jury indicted Lambeth for the offense of aggravated assault on a
public servant, which read:
The Grand Jurors for the County of El Paso, State of Texas, duly organized as such,
at the July Term, A.D., 2004 of the 120th Judicial District Court for said County,
upon their oaths in said Court, present that on or about the 7th day of September,
2004 and anterior to the presentment of this indictment in the County of El Paso and
State of Texas, GEORGE LAMBETH, hereinafter referred to as Defendant, did
then and there intentionally and knowingly threaten STEVE COX with imminent
bodily injury and did then and there use and exhibit a deadly weapon, to-wit: a Ford
motor vehicle, during commission of said assault, and the said STEVE COX was
then and there a public servant, to-wit: an El Paso Fire Department Fire Inspector
in the lawful discharge of an official duty, and the said Defendant knew STEVE
COX was a public servant, And it is further presented that GEORGE LAMBETH
used and exhibited a deadly weapon, to-wit: a Ford motor vehicle, during the
commission of and immediate flight from said offense, AGAINST THE PEACE
AND DIGNITY OF THE STATE. [Emphasis in original.]

            The trial court heard arguments and testimony regarding the motion to revoke on May 13,
2005. Lambeth pled “Not true” to the motion. The State called Steve Cox, an El Paso Fire
Department fire inspector. Cox testified that on September 7, 2004, he was driving in a marked Fire
Department unit on his way to an inspection site when he saw Lambeth approach in his vehicle. Cox
was not sure if Lambeth needed help so he leaned over and rolled down his right window. Cox then
heard Lambeth say, “Why are you following me” and Lambeth began cussing at him. As Cox drove
away, Lambeth swerved at him and almost made him veer into the median. He saw Lambeth
laughing and it looked like Lambeth’s vehicle hit a brown truck. Although Cox did not see the
collision, he heard it. Lambeth and the driver of the brown truck pulled over. Cox, who was thirty
to fifty yards ahead of the accident, pulled over and wrote down Lambeth’s license plate number. 
            Contemporaneously, an El Paso Community College police unit approached from the
eastbound lanes and began to turn around in their direction. Lambeth and the driver of the truck
drove off. Cox spoke with the officers and then headed back to his headquarters to report the
incident.
            At the revocation hearing, Lambeth testified that Cox had drifted into his lane without
signaling, that he did not intend to ram Cox, and that he never collided with the brown truck. As
soon as he pulled over, the driver of the brown truck stopped and informed him that he had seen
what Cox had done. Lambeth thought Cox’s car was either a white Ford Taurus or Tempo that
belonged to the water company. He never saw a El Paso Community College police unit or any law
enforcement marked cars coming his way. 
            After both the sides rested, the State abandoned paragraph 3a. The defense did not object. 
The parties then disputed whether the abandonment of paragraph 3a precluded prosecution for the
offense of aggravated assault on a public servant. The State contended that it abandoned 3a because
there was a problem with the date of the alleged offense since it did not occur on August 28. 
Ultimately, the trial court found paragraphs 3a-1 and 3x were true, entered an order modifying the
terms and conditions of community supervision, and committed Lambeth to thirty days in jail. 
            On May 19, 2005, Lambeth filed an application for writ of habeas corpus, alleging the trial 
court illegally restrained him on the charge of aggravated assault on a public servant. He complained
that the allegations of the aggravated assault were litigated in the motion to revoke probation and that
further prosecution was barred by collateral estoppel. At the hearing, the trial court acknowledged
that a finding of fact regarding the aggravated assault was not made because it was abandoned by
the State. The court denied the application and stayed the proceedings in the aggravated assault case. 
                                                     COLLATERAL ESTOPPEL
            On appeal, Lambeth contends the State is collaterally estopped from re-litigating the facts
of the aggravated assault since it failed to prove them at the revocation hearing. 
            When an issue of ultimate fact has been determined by a final judgment, the doctrine of
collateral estoppel precludes the same parties to litigate that same issue in any future lawsuit. Jaime
v. State, 81 S.W.3d 920, 926 (Tex.App.--El Paso 2002, pet. ref’d), citing Ashe v. Swenson, 397 U.S.
436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). In the criminal context, the doctrine of
collateral estoppel precludes the government from relitigating certain facts in order to establish the
fact of the crime. Ex parte Tarver, 725 S.W.2d 195, 198 (Tex.Crim.App. 1986). We may not apply
the doctrine hypertechnically; but we examine the record to determine what issues have been
foreclosed between the parties. Jaime, 81 S.W.3d at 926, citing Ex parte Tarver, 725 S.W.2d at 198. 
Whether collateral estoppel bars a subsequent prosecution depends upon two inquiries: (1) Has a
fact issue already been determined, adversely to the State, in a valid and final judgment between the
same parties? (2) Is the State now trying to re-litigate that same fact issue? Ex parte Taylor, 101
S.W.3d 434, 440 (Tex.Crim.App. 2002); Ex parte Tarver, 725 S.W.2d at 199; Jaime, 81 S.W.3d
at 926. This rule applies regardless of whether the proceeding involved was a formal criminal
prosecution or a hearing on a motion to revoke. Jaime, 81 S.W.2d at 926. 
Standard of Review
            We review a trial court’s decision to grant or deny a writ of habeas corpus for an abuse of
discretion. Jaime v. State, 81 S.W.3d 920, 925 (Tex.App.--El Paso 2002, pet. ref’d). We view the
evidence in the light most favorable to the trial court’s ruling and accord almost total deference to
the trial court’s determination of the historical facts that are supported by the record, especially those
fact findings based on credibility and demeanor. Ex parte Peterson, 117 S.W.3d 804, 819 n.67
(Tex.Crim.App. 2003); Jaime, 81 S.W.3d at 925.
Was There an Adverse Fact-Finding?
            Lambeth argues that the abandonment of paragraph 3a at the revocation hearing is tantamount
to an acquittal and is the equivalent of an adverse finding. In support of this argument, he relies on
Gilliam v. State, 131 Tex.Crim. 8, 96 S.W.2d 86, 88 (Tex.Crim.App. 1936) and Lewis v. State, 889
S.W.2d 403, 406 (Tex.App.--Austin 1994, writ ref’d). These are cases involving double jeopardy. 
Because he frames the issue on appeal as one of collateral estoppel and not jeopardy, we believe
these cases to be inapplicable. He also generally opines that fundamental fairness and due process
should prohibit the State from re-litigating the issue, but he provides no authority supporting this
conclusion. We construe his sole argument on appeal to raise the issue of collateral estoppel, and
any complains relating to double jeopardy, fundamental fairness, or due process have not been
properly preserved for review. Tex.R.App.P. 38.1.
            The burden on an issue of collateral estoppel lies with the defendant to demonstrate, by
examination of the record of the first proceeding, that the factual issue being sought to foreclose was
actually decided in the first proceeding. Guajardo v. State, 109 S.W.3d 456, 460 (Tex.Crim.App. 
2003). Here, the trial court made no specific finding regarding the aggravated assault because it
found only that paragraphs 3a-1 and 3x were true. Indeed, it noted that there was no fact-finding on
that issue. Without a specific finding, Lambeth has failed to demonstrate the doctrine of collateral
estoppel is applicable. Smith v. State, 74 S.W.3d 868, 875 (Tex.Crim.App. 2002)(because issue of
ultimate fact was not determined at the punishment hearing, doctrine of collateral estoppel was
inapplicable); Jaime, 81 S.W.3d at 926 (before we may determine whether collateral estoppel
applies, there must have been a fact-finding which illustrates the basis for the court’s decision). 
Consequently, we find no abuse of discretion. We overrule the sole issue for review and affirm the
judgment of the trial court.

November 2, 2006                                                       
                                                                                    ANN CRAWFORD McCLURE, Justice

Before McClure, J., Chew, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment

(Do Not Publish)