**Affirmed and Memorandum Opinion filed December 13, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00766-CR

---

## EX PARTE TUAN DINH PHAN

---

**On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 824820-A**

---

## M E M O R A N D U M   O P I N I O N

Appellant, Tuan Dinh Phan, appeals from the trial court's order denying his application for writ of habeas corpus. We affirm.

### BACKGROUND

Phan, a citizen of Vietnam and permanent legal resident, entered the United States in 1995. On September 17, 1999, Phan was seventeen years old and a high school student. The police stopped Phan's vehicle that day because it matched the description of a car involved in a gang fight. During the stop, the police spotted thirty-five squares of paper that the police believed to be PCP, or "acid," in plain view inside a plastic baggie on the driver's side floorboard.[1] Unable to obtain a positive field test, the police released

---

[1] The evidence in the appellate record includes the reports of the police officers involved in the initial stop of Phan's vehicle. It is not clear from those reports whether Phan was alone in the vehicle or

Phan pending the results of the laboratory testing on the thirty-five squares of paper. When the laboratory testing established that the squares contained lysergic acid diethylamide, or LSD, the police obtained a warrant for Phan's arrest. Phan was arrested at his high school. At the time the police took Phan into custody, they discovered a small baggie containing marijuana in Phan's backpack.

On November 1, Phan pled guilty to the offense of possession of a controlled substance, received a deferred adjudication, and was sentenced in accordance with a plea bargain to a term of five years' community supervision. Phan did not file a direct appeal. Phan successfully completed his term of community supervision in 2004.

Phan was served with a Notice to Appear by the United States Department of Homeland Security on July 16, 2009. The Notice to Appear alleged Phan was subject to removal from the United States as a result of his 1999 guilty plea for possession of LSD. A hearing was eventually scheduled to occur on August 31, 2011. The result of that hearing, or even whether the hearing occurred as scheduled, does not appear in the appellate record.

On July 8, 2011, Phan filed an application for writ of habeas corpus, contending that his trial counsel in the LSD case failed to advise him accurately regarding the adverse immigration consequences that would result from his decision to enter a guilty plea, thereby rendering his plea involuntary under *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010). In the sworn application, Phan asserted he would not have accepted the guilty plea for a deferred adjudication if he had known the plea would begin proceedings to remove him from the United States. According to Phan, he would have opted for a trial and risked jail time because "being deported from the United States is a far greater punishment that any . . . jail sentence."

Phan also attached an affidavit from his trial counsel in the LSD case, Aloysius

whether he was the driver and there were other people in the vehicle as well. What is clear is that the LSD was found in plain view on the driver's side floorboard and Phan was listed in the reports as the only suspect.

2

Duy-Hung Hoang. Hoang informed the trial court that he was unable to review his file from Phan's LSD case due to the age of the file or the fact that many of his files were lost in Hurricane Ike. As a result, Hoang stated he did not remember any specific details of his representation of Phan. Hoang then stated that since 1998, he has advised his "non-citizen clients that by accepting a plea for a felony controlled substance, Immigration authorities may or may not deport them as described in the plea admonishments." Hoang continued that he "did not advise Mr. Phan that he 'shall' or 'will' be deported based on this plea."

A hearing took place on Phan's application on August 18, 2011. Phan called a single witness to testify live at the hearing, Yalilla Guerrero. Guerrero is an attorney licensed in the State of Texas who practices both criminal and immigration law. Guerrero opined that, back in 1999 when Phan agreed to enter a guilty plea in the LSD case, his decision would cause immigration authorities to institute removal proceedings against him. Guerrero explained that, by 1999, immigration laws had been changed and the changes had a dramatic impact on lawful permanent residents such as Phan. According to Guerrero, lawful permanent residents would now be more seriously affected by any type of criminal conviction, and they had fewer remedies available to them in immigration court to avoid those consequences. Guerrero opined that Hoang's advice to Phan in 1999—that his decision to plead guilty to the drug possession charge may or may not result in his being deported from the United States—was incorrect, as the law was clear and easily available to criminal defense lawyers such as Hoang that an guilty plea by Phan in 1999 meant he would be deported.

At the conclusion of the hearing, the trial court denied Phan's application. The trial court also signed written findings of fact and conclusions of law. In addition to making findings regarding the facts of the underlying LSD offense, the trial court found "the affidavit of Aloysius Duy-Hung Hoang credible." The trial court also found that "[t]he applicant's claim that but for Hoang's failure to state that a guilty plea for a possession of controlled substance charge would lead to his automatic immigration

removal from the United States of America he would have taken his case to trial is not credible." After reviewing the record, the court found that "the applicant would not have gone to trial, even had he received different immigration advice." This appeal followed.

ANALYSIS

In a single issue on appeal, Phan contends the trial court abused its discretion when it denied his application for writ of habeas corpus.

## I. Standard of review and applicable law

In reviewing the trial court's decision to grant or deny habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 804 (Tex. Crim. App. 2007). We will uphold the trial court's ruling absent an abuse of discretion. *Id.* The trial judge is the original fact finder in habeas corpus proceedings. *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010). In conducting our review, we afford almost total deference to the trial judge's determination of the historical facts that are supported by the record, especially when the factual findings are based on an evaluation of credibility and demeanor. *Peterson*, 117 S.W.3d at 819. This is true even when the factual findings are based on affidavit testimony. *Ex parte Thompson*, 153 S.W.3d 416, 425 (Tex. Crim. App. 2005). We afford the same amount of deference to the trial judge's application of law to the facts if the resolution of the ultimate questions turns on an evaluation of credibility and demeanor. *Peterson*, 117 S.W.3d at 819. If the resolution of the ultimate questions turns on an application of legal standards, we review the determination de novo. *Id.*

Phan's application for writ of habeas corpus was based on his argument that he was denied effective assistance of counsel, which rendered his decision to plead guilty involuntary. The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the criminal defendant. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The

4

*Strickland* two-pronged test for ineffective assistance of counsel applies to guilty pleas premised on an allegation that the criminal defendant received ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish ineffective assistance of counsel, a criminal defendant must prove by a preponderance of the evidence that (1) his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 687; s*ee Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). In order to satisfy the prejudice prong of the *Strickland* test in a guilty plea case, a criminal defendant or habeas corpus applicant must show that there is a reasonable probability that, but for his trial counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59; *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Strickland*, 466 U.S. at 697.

In *Padilla*, the Supreme Court held that a criminal defense attorney's representation is constitutionally deficient if the attorney fails to warn a noncitizen client of the certainty of removal from the United States when the terms of the relevant immigration statute are "succinct, clear, and explicit" in defining the removal consequences of a particular conviction. 130 S.Ct. at 1483. "When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* Under current immigration law, however, "if a noncitizen has committed a removable offense . . . his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses." *Id.* at 1480. Therefore, an attorney's failure to so advise his client constitutes deficient performance. *Id.* at 1483–84.

While recognizing that preserving the opportunity to remain in the United States might be a more important consideration to a particular defendant in considering a plea offer than the possibility of incarceration, the Supreme Court went on to observe that before relief may be granted, the petitioner must also convince the court that a decision to reject a plea bargain would have been rational under the circumstances. *Id.* at 1485. When determining whether Phan would have pled guilty but for the allegedly deficient advice of his trial counsel, we consider the circumstances surrounding the plea and the gravity of the misrepresentation material to that determination. *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999).

## II.    The trial court did not abuse its discretion in denying Phan's habeas application.

### A.    *Padilla* applies retroactively.

In his brief, Phan presumes *Padilla* applies retroactively to the advice he received in connection with his 1999 guilty plea. In response, the State argues it should not. We need not address this issue further because this court held that *Padilla* applies retroactively in *Aguilar v. State*, 375 S.W.3d 518 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

### B.    Phan did not prove prejudice.

Assuming, without deciding, that Hoang's performance was deficient when he advised Phan regarding the immigration consequences of a guilty plea, we turn to the prejudice prong of *Strickland*. Under this prong, Phan was required to show that there was a reasonable probability that, but for his trial counsel's erroneous immigration advice, he would have rejected the plea bargain and insisted on going to trial. *Hill*, 474 U.S. at 59; *Ex parte Morrow*, 952 S.W.2d at 536. In addition, Phan had to establish that a decision to reject the plea bargain would have been rational under the circumstances. *Padilla*, 130 S.Ct. at 1485.

Here, the only evidence supporting Phan's argument was his sworn statement in his application for writ of habeas corpus that he "would not have accepted a guilty plea

6

for a deferred probation knowing that it would begin removal proceedings under the Immigration and Nationality Act. [Phan] would have opted for trial. Being deported from the United States is a far greater punishment than any . . . jail sentence . . . ." The trial court found that statement not credible. On appeal, we must defer to this finding if it is supported by the record. *Peterson*, 117 S.W.3d at 819. We conclude that it is.

First, Phan was subject to automatic removal regardless of whether he pled guilty to the possession charge or decided to go to trial and was ultimately found guilty by a jury. This would have been true even if he received probation, instead of incarceration, as a consequence of a guilty verdict. 8 U.S.C. §1101(a)(48) (2006) (defining a "conviction" as having occurred for purposes of federal immigration law when a formal judgment of guilt of the alien has been entered by a court); *see United States v. Ramirez*, 367 F.3d 274, 277 (5th Cir. 2004) ("The term 'conviction' is now defined as a formal judgment of guilt entered by the court or, if an adjudication of guilt has been withheld where the judge has imposed some form of punishment, penalty, or restraint on the alien's liberty."); *see also Elizondo-Vasquez v. State*, 361 S.W.3d 120, 122 (Tex. App.—Texarkana 2011, no pet.) ("for purposes of immigration, an alien is convicted where he is found guilty or when he enters a plea of guilty and some form of punishment, penalty, or restraint of liberty is imposed").

Second, the trial court rejected as not credible Phan's contention that he may have been able to reach a deal with the State resulting in pre-trial diversion but for Hoang's immigration advice. The record supports that finding, as the trial judge took judicial notice during the habeas hearing that pre-trial diversion was not available in 1999 under the Harris County District Attorney's policies and prosecutorial guidelines then in effect.

Third, by pleading guilty, Phan likely avoided removal proceedings longer than he would have by going to trial. The record establishes that the Department of Homeland Security did not serve Phan with the Notice to Appear until July 16, 2009, almost ten years after Phan entered his plea of guilty in the LSD case. The habeas hearing also revealed that if Phan had been found guilty of the possession charge and was sentenced to

7

some period of incarceration, he would have been brought to the attention of immigration officials at that time.

Finally, the evidence in the underlying case of third-degree felony drug possession against Phan, set out above, was strong. Guerrero, Phan's own expert witness, testified that if Phan had rejected the plea bargain and opted to go to trial, the State could have amended or re-indicted the case against Phan as possession with intent to deliver, a second-degree felony. *See* Tex. Health & Safety Code Ann. § 481.1121 (West 2010). The immigration consequences would have been the same for both felonies, but the potential punishment was more severe for a second-degree felony charge, two to twenty years' confinement, as opposed to two to ten years' for the original third-degree felony charge. *Compare* Tex. Penal Code Ann. § 12.33 (West 2011), *with* Tex. Penal Code Ann. § 12.34(a) (West 2011).

For these reasons, we conclude the record supports the trial court's finding that Phan's sworn statement—that he would have rejected the plea bargain and elected to go to trial if he had received correct immigration advice—was not credible. The record also supports the finding that Phan would not have gone to trial even had he received different advice, and it indicates that a decision to go to trial would not have been rational under the circumstances present in 1999. Therefore, we hold Phan was not prejudiced as a result of any deficient conduct by trial counsel in the underlying LSD case. We overrule Phan's single issue.

## CONCLUSION

Having overruled Phan's issue on appeal, we affirm the trial court's denial of his application for writ of habeas corpus.


/s/    J. Brett Busby
         Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.
Do Not Publish — Tex. R. App. P. 47.2(b).

8