

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-14-00063-CR |
| | § | |
| | | Appeal from |
| EX PARTE: RALPH CECIL MELTON | § | |
| | | County Criminal Court at Law No. 4 |
| | § | |
| | | of El Paso County, Texas |
| | § | |
| | | (TC # 20110C03228) |
| | § | |
| | § | |

# **O P I N I O N**

In this appeal we are asked whether the State's prosecutor was simply being persistent, and perhaps overly so, in attempting to admit evidence, or whether the prosecutor was attempting to goad the defendant, Ralph Melton, into moving for mistrial. The question arises following a mistrial based on Melton's motion. He now contends that double jeopardy bars resetting the case for trial. The trial court found the State's prosecutor was not intentionally trying to provoke a mistrial and denied Melton's application for pretrial habeas corpus relief based on double jeopardy. Finding no abuse of discretion in that decision, we affirm.

## **DOUBLE JEOPARDY**

In his sole issue, Melton contends that the Fifth Amendment to the United States Constitution prohibits a retrial of his case. The Double Jeopardy Clause of the Fifth Amendment

protects a criminal defendant from repeated prosecutions for the same offense. U.S. Const. art. V; *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982). The Double Jeopardy Clause affords a criminal defendant a "valued right to have his trial completed by a particular tribunal." *Oregon v. Kennedy*, 456 U.S. at 671-72, 102 S.Ct. at 2087; *see Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex.Crim.App. 2007).

As a general rule double jeopardy does not bar a retrial when a mistrial is granted at the defendant's request. *Oregon v. Kennedy*, 456 U.S. at 673, 102 S.Ct. at 2088. But there is an important exception: the Double Jeopardy Clause will bar retrial when the defendant is able to show that the prosecution engaged in conduct that was intended to provoke the defendant into moving for a mistrial. *Id.* at 679, 102 S.Ct. at 2091; *Ex parte Lewis*, 219 S.W.3d at 371. At one time, Texas had a broader view of this exception and barred a retrial when it was shown that the prosecutor was aware of, but consciously disregarded the risk that his conduct would require a mistrial at the defendant's request. *Bauder v. State*, 921 S.W.2d 696 (Tex.Crim.App. 1996). But *Bauder* was overruled by *Ex parte Lewis* and the Texas rule is now co-extensive to the *Oregon v. Kennedy* standard. *Ex parte Lewis*, 219 S.W.3d at 371. The present day exception has been described by both the United States Supreme Court and the Court of Criminal Appeals as a narrow one. *Oregon v. Kennedy*, 456 U.S. at 673, 102 S.Ct. at 2088; *Ex parte Masonheimer*, 220 S.W.3d 494, 506 (Tex.Crim.App. 2007).

A habeas corpus applicant must prove the double jeopardy claim by a preponderance of the evidence. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex.Crim.App. 2013). Consequently, Melton was required to establish by a preponderance of the evidence that the prosecutor engaged in conduct that was intended to provoke him into moving for a mistrial. *Oregon v. Kennedy*, 456 U.S. at 679; *Ex parte Peterson*, 117 S.W.3d 804, 818 (Tex.Crim.App. 2003). In reviewing the

2

trial court's decision to deny habeas relief, we review the evidence in the light most favorable to the trial court's ruling. *Ex parte Masonheimer*, 220 S.W.3d at 507. We afford almost total deference to the trial judge's determination of historical facts which are supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).

## FACTUAL SUMMARY

Melton was charged with assault causing bodily injury to a family member. The case was set for a jury trial on October 28, 2013. Melton filed several motions *in limine*, one which generally sought to prohibit the State from eliciting hearsay statements, and one which attempted to prohibit the State from admitting a "911" tape regarding the incident. Our record is unclear as to the rulings on these motions; the general hearsay motion in limine has the notion "u/a- as situation warrants" handwritten on it and the order on
the 911 motion only says it is "granted/denied."

The State called Gabriela Guzman as its first witness. She was a friend of the complaining witness and received a text message from her early one morning asking for help. She then called the complaining witness who asked Guzman to call 911 for her. Guzman testified without objection that the complaining witness needed assistance because Melton had hit her. Guzman did in fact call 911 and the State attempted to admit a recording of that call, which apparently contains statements from Guzman attributed to the complaining witness. The request to introduce the 911 tape was made in front of the jury, which was then taken out of the courtroom while the court heard arguments on the evidence.

Melton objected to the 911 tape as containing hearsay. The gist of the State's response was that any statements were exited utterances and thus hearsay exceptions. The trial court

3

excluded the 911 tape, but appeared to invite the State to elicit the substance of what it contained from the live witnesses:

> THE COURT: You can establish that through Ms. Guzman through further questioning. I'm not going to allow that tape in. I don't see any -- any value to it, aside from the fact that it's a 'gee whiz' recording, but she can testify to everything that she spoke to in that recording right here and now. You've got a better source of evidence right there [referring to Guzman].

The prosecutor then attempted to have Guzman testify to what the complaining witness had told her. Guzman had apparently gone to the complaining witness's residence after she made the 911 call, and then later that morning drove her to the hospital. The prosecutor used a two-step process, first having Guzman testify to the complaining witness's panicked state of mind, and then having her repeat what the complaining witness told her. The prosecutor was initially successful in this tact, getting at least two hearsay objections overruled. But then the trial court began sustaining the hearsay objections and cautioned the prosecutor that she was eliciting hearsay. The witness finally clarified that any excited utterance likely only came in the first phone conversation early that morning. At that time, the complaining witness was described as upset and distraught. Based on that testimony, the prosecutor attempted to elicit the substance of the complaining witness's statements. But the trial court sustained Melton's hearsay objection. The prosecutor then tried to further develop Guzman's perception of the complaining witness's state of mind, and elicited that the complaining witness sounded as if she had been crying and was "somewhat frightened." The prosecutor then re-urged that any statements from the complaining witness would be an exited utterance. The prosecutor also sought again, in front of the jury, to admit the 911 tape.

Melton objected and the jury was taken out. Melton moved for a mistrial which was taken under advisement. The State's prosecutor resisted the mistrial, arguing that a limiting

4

instruction would cure any issue as to the mention of the 911 tape. When the trial court learned from the bailiff that some of the jurors were openly wondering about the contents of the 911 call, it granted the mistrial. The trial court described the State's conduct as a "mistake," a "procedural error," something done "in a disingenuous manner," but not something "intentional" or anything meriting sanctions.

On the eve of the retrial, Melton moved for a pretrial application for a writ of habeas corpus contending that a retrial was barred by double jeopardy. At the hearing on the application, Melton elicited testimony from the prosecutor. She testified that she had attempted to re-urge the admission of the 911 tape so that the trial court could reconsider its ruling. She denied that she did so out of fear of losing the case. Melton's application was denied. The trial court explained its ruling this way:

> I've already made a ruling that it was not done intentionally; it was not done disingenuously; it was not done with any purposeful intent or willingness to violate the Court's order. As I stated on the record then, that it was a mistake. I think it was, as I quoted, a boo-boo.

## ANALYSIS

"Especially during the 'rough and tumble' of a jury trial, courts must expect that much rule-violating conduct is unplanned, inadvertent, or impulsive." *Ex parte Peterson*, 117 S.W.3d at 817-18. To differentiate that kind of conduct from the intentional goading conduct which invokes the Double Jeopardy Clause, the Court of Criminal Appeals has set out a nonexclusive list of objective factors to assist the trial court when assessing the prosecutor's state of mind:

> 1) Was the misconduct a reaction to abort a trial that was 'going badly for the State?' In other words, at the time that the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal?

> 2) Was the misconduct repeated despite admonitions from the trial court?

3) Did the prosecutor provide a reasonable, 'good faith' explanation for the conduct?

4) Was the conduct 'clearly erroneous'?

5) Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety?

6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they consistent with intentional or reckless misconduct?

*Ex parte Wheeler,* 203 S.W.3d 317, 323-24 (Tex.Crim.App. 2006).[1] Under these factors we find no basis to believe that the trial court abused its discretion in failing to find that the State re-urged the admission of the 911 tape to goad Melton into filing a motion for mistrial.

First, there is no evidence in the record before us that the State was trying to abort the trial because it was losing. Guzman was the first witness in the trial, thus there is nothing in the record to show whether the trial was going well or poorly for the State. There is nothing in the record to suggest that the empaneled jury was good or bad for the State. There is nothing in the record to show that absent the admission of the 911 tape, the State could not make its case. Indeed, it appears that the 911 tape offered nothing in addition to what Guzman had already testified to, and presumably what the complaining witness would testify to. The applicant carries the burden to prove entitlement to habeas relief, *Ex parte Richardson,* 70 S.W.3d 865, 870 (Tex.Crim.App. 2002), and Melton has simply not carried his burden on this issue.

Nor does the record show that the State repeatedly violated any admonition of the trial court. The 911 tape was actually only mentioned twice before the jury, once when it was first offered, and a second time when it was re-offered. There were multiple attempts to have

---

[1] *Ex parte Wheeler* is a pre-*Ex parte Lewis* case, but these factors were set out to assist in deciding claims under either the federal or state constitutional guarantees against double jeopardy and would still apply to the *Oregon v. Kennedy* analysis. 203 S.W.3d at 323.

6

Guzman testify to what the complaining witness had told her. That line of questioning, however, was not the basis for the motion for mistrial.

The prosecutor claimed that she re-offered the 911 tape in the hopes that the trial court would reconsider its ruling. Courts sometimes do reconsider their rulings and asking a court to reconsider a legal issue is a reasonable explanation for the prosecutor's conduct. The trial court apparently accepted this explanation and Melton offers no compelling reasons why her claim was not credible. *See Sandifer v. State*, 233 S.W.3d 1, 3-4 (Tex.App.--Houston [1st Dist.] 2007, no pet.)(deferring to trial court's finding that prosecutor did not intentionally goad the defense into moving for a mistrial, particularly when based on the trial court's evaluation of the prosecutor's credibility).

Nor was the re-offer of the evidence without a plausible basis. Between the time of the first and second offer of the 911 tape, Guzman had provided additional testimony about the complaining witness's state of mind. When the first offer was made, Guzman had only testified that the complaining witness sounded "somewhat" frightened. By the time the second offer was made, she had additionally testified that the complaining witness was upset, distraught, and sounded as if she had been crying. This additional testimony might have been germane to the excited utterance claim that the State was making. An excited utterance is an exception to the hearsay rule. TEX.R. EVID. 803(2). It is a "statement relating to a startling event or condition made while the declarant [is] under the stress of excitement caused by the event or condition." *Id*. The witness's state of mind is critical to the trial court's determination of whether a statement is in fact excited. *See Cook v. State*, 199 S.W.3d 495, 498 (Tex.App.--Houston [1st Dist.] 2006, no pet.)(911 call from witness who sounded agitated, was very upset, and spoke very quickly was held admissible); *Campos v. State*, 186 S.W.3d 93, 99 (Tex.App.--Houston [1st

7

Dist.] 2005, no pet.)(911 call from complaining witness who was still dominated by emotions of the claimed attack was held admissible). While extending this hearsay exception to what Guzman heard, and then repeated to the 911 operator may raise additional issues, the State's theory for the admission of the 911 tape was at least plausible, which undercuts the claim it offered only to goad a mistrial.

The events leading up the motion for mistrial were also consistent with an inadvertent mistake rather than intentional conduct seeking to goad a motion for mistrial. When the State first moved to admit the 911 tape, the trial court appeared to invite the prosecutor to have Guzman directly testify to what the 911 tape would have contained. The State's prosecutor attempted to do so and was confronted with mixed results on the hearsay objections, having some overruled, but others sustained. When the prosecutor could not get the evidence directly from Guzman on the stand (as the trial court suggested she could), the State re-urged the admission of the 911 tape. This action appears more consistent with the prosecutor's frustration at not being able to get the statements into evidence, than any attempt to torpedo the trial. The fact that the State's attorney resisted the mistrial motion also belies some plan to cause a mistrial.

Accordingly, we overrule Issue One and affirm the denial of the application for writ of habeas corpus. As the application was presented pretrial, we remand the case back the trial court for further proceedings not inconsistent with this opinion.

April 22, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

8